RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0043P (6th Cir.)
File Name: 03a0043p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

THE TAUBMAN COMPANY,
    *Plaintiff-Appellee,*

    *v.*

WEBFEATS, a Texas Company
and HENRY MISHKOFF, an
individual,
    *Defendants-Appellants.*

Nos. 01-2648/2725

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-72987—Lawrence P. Zatkoff, Chief District Judge.

Argued: October 16, 2002

Decided and Filed: February 7, 2003

Before: BOGGS, SUHRHEINRICH, and CLAY, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Paul A. Levy, PUBLIC CITIZEN LITIGATION
GROUP, Washington, D.C., for Appellants. Douglas W.
Sprinkle, GIFFORD, KRASS, GROH, SPRINKLE,

ANDERSON & CITKOWSKI, Birmingham, Michigan, for Appellee. **ON BRIEF:** Paul A. Levy, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Appellants. Julie A. Greenberg, GIFFORD, KRASS, GROH, SPRINKLE, ANDERSON & CITKOWSKI, Birmingham, Michigan, for Appellee. Ann Beeson, Kevin S. Bankston, AMERICAN CIVIL LIBERTIES UNION, New York, New York, Michael J. Steinberg, Kary L. Moss, AMERICAN CIVIL LIBERTIES UNION, Detroit, Michigan, for Amicus Curiae.

_____

**OPINION**

_____

SUHRHEINRICH, Circuit Judge. Defendant-Appellant Henry Mishkoff, d/b/a Webfeats, appeals from two preliminary injunctions, respectively entered on October 11, 2001, and December 7, 2001, in the United States District Court for the Eastern District of Michigan, together granting Plaintiff-Appellee the Taubman Company's (Taubman) request to prevent Mishkoff from using six internet domain names because they likely violate Taubman's trademarks in the terms "Taubman," and "The Shops at Willow Bend."

Mishkoff claims two assignments of error. First, he contends that the United States District Court for the Eastern District of Michigan lacked personal jurisdiction over him. Second, he claims that even if jurisdiction was proper, Taubman is unlikely to succeed on the merits of its trademark claims because it has not demonstrated that customers would likely be confused between the origin of Taubman's and Mishkoff's products.

We reverse the decision of the district court and dissolve both injunctions. We find, first, that Mishkoff has waived any challenge he might have to the personal jurisdiction of the district court in the Eastern District of Michigan. Second, Taubman had failed to demonstrate a likelihood of success on the merits because Mishkoff's use was not "in connection

with the sale or advertising of goods or services," and there is no likelihood of confusion among consumers.

## I.  Facts

Mishkoff is a resident of Carrollton, Texas, and a web designer by trade.  Upon hearing the news that Taubman, a Delaware corporation with its principal place of business in Michigan, was building a shopping mall called "The Shops at Willow Bend," in Plano, Texas, Mishkoff registered the domain name, "shopsatwillowbend.com," and created an internet website with that address.  Mishkoff had no connection to the mall except for the fact that it was being built near his home.

Mishkoff's website featured information about the mall, with a map and links to individual websites of the tenant stores.  The site also contained a prominent disclaimer, indicating that Mishkoff's site was unofficial, and a link to Taubman's official site for the mall, found at the addresses "theshopsatwillowbend.com," and "shopwillowbend.com."

Mishkoff describes his site as a "fan site," with no commercial purpose.  The site did, however, contain a link to the website of a company run by Mishkoff's girlfriend, Donna Hartley, where she sold custom-made shirts under the name "shirtbiz.com;" and to Mishkoff's site for his web design business, "Webfeats."

When Taubman discovered that Mishkoff had created this site, it demanded he remove it from the internet.  Taubman claimed that Mishkoff's use of the domain name "shopsatwillowbend.com" infringed on its registered mark, "The Shops at Willow Bend."  Taubman filed a complaint on August 7, 2001, claiming, *inter alia*, trademark infringement under the Lanham Act, 15 U.S.C. § 1114, asking for a preliminary injunction, and demanding surrender of Mishkoff's domain name.

Mishkoff responsively registered five more domain names: 1) taubmansucks.com;  2)  shopsatwillowbendsucks.com;

3) t h e s h o p s a t w i l l o w b e n d s u c k s . c o m;  4) willowbendmallsucks.com;  and 5) willowbendsucks.com. All five of these web names link to the same site, which is a running editorial on Mishkoff's battle with Taubman and its lawyers, and exhaustively documents his proceedings in both the district court and this Court, both through visual scans of filed motions, as well as a first person narrative from Mishkoff.  In internet parlance, a web name with a "sucks.com" moniker attached to it is known as a "complaint name," and the process of registering and using such names is known as "cybergriping."[1]  *See, e.g.*, Martha Kelley, *Is Liabilty Just a Link Away? Trademark Dilution by Tarnishment Under the Federal Trademark Dilution Act of 1995 and Hyperlinks on the World Wide Web*, 9 J. INTELL. PROP. L. 361, 375 (2002) (defining "cybergriping"); Ronald F. Lopez, *Corporate Strategies for Addressing Internet "Complaint" Sites*, 14 INT'L L. PRACTICUM 101, 101-02 (Autumn 2001) (giving examples of different types of "complaint" sites).

On October 11, 2001, the district court granted Taubman's motion for a preliminary injunction, enjoining Mishkoff from using the first host name, "shopsatwillowbend.com."[2]  On October 15, 2001, Taubman filed a motion to amend the preliminary injunction to include the five "complaint names" used by Mishkoff.  On December 7, 2001, the district court allowed the amendment and enjoined Mishkoff from using the complaint names.

---

[1] Since the issuance of the injunctions, Mishkoff has apparently created a sixth "complaint site," "giffordkrassgrohsprinklesucks.com," referencing the law firm representing Taubman on appeal.  This domain name was not a part of the December 7, 2001 preliminary injunction order that enjoined Mishkoff from maintaining the other "complaint names."

[2] Taubman sought the injunction under other claims too, including violation of the Anticybersquatting Act.  However, the district court granted the injunction based only on the Lanham Act claim.  Accordingly, that is the only issue before this Court.

Taubman is not likely to succeed on the merits of the "shopsatwillowbend.com" claim precludes any further discussion of the Safe Distance Rule.

## IV.  Conclusion

For the foregoing reasons, we **REVERSE** the decision of the district court and dissolve both preliminary injunctions preventing Mishkoff from using the domain name, "shopsatwillowbend.com," and the five "complaint names" listed above.

characteristic of the plaintiff so as to put the public on notice that the two are not related.

We need not find whether the Safe Distance Rule has survived the enactment of the Lanham Act, because even if it is still good law, it does not apply here. First, the Safe Distance Rule has only been applied in settings where the second use was merely a slight deviation of the first use and was also commercial. *See Broderick,* 41 F.2d at 353-54 (developing Safe Distance Rule in instance when infringer attempted to change offending use from "au-tow-line" to "auto-tow-line"); *Badger Meter, Inc. v. Grinell Corp.*, 13 F.3d 1145, 1156 (7th Cir. 1994) (applying Safe Distance Rule to prevent infringer from changing infringing logo in trivial ways, because such changes would force relitigation of essentially the same issue). The Safe Distance Rule has never been applied when the second use is a non-commercial critical commentary, but only where the second use is a different name for the same product. *See, e.g.*, *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 40 (1st Cir. 2002) (applying Safe Distance Rule where infringer simply tried to escape liability by changing infringing "Heritage Series" to "H-Series"); *Broderick*, 41 F.2d at 353-54. As stated above, the First Amendment protects Mishkoff's commentary and criticism, and negates the Safe Distance Rule to any extent it might otherwise have applied.

Second, the Safe Distance Rule was meant to be applied only against proven infringers. *See Broderick*, 41 F.2d at 354 (referring only to persons "once convicted of unfair competition"); *see also, Tamko Roofing Products*, 282 F.3d at 30 (applying Safe Distance Rule only after defendant had been found in contempt of an injunction); *cf. Prince of Peace Enters. v. Kwok Shing Import-Export Inc.*, No. C 94-04183, 1997 WL 475699 at *5 (July 8, 1997 N.D.Cal.) (stating that the Safe Distance Rule does not apply where "one was not 'caught' infringing a trademark"). Mishkoff has not previously been found liable of infringement, nor in contempt of either injunction. Accordingly, our finding above that

On November 9, Mishkoff filed a notice of appeal from the October 11 injunction. On December 10, Mishkoff filed a notice of appeal from the December 7 injunction. Accordingly, each case is timely before this Court under Fed. R. App. P. 4(a)(1)(A). The cases have been consolidated on appeal.

## II.  Personal Jurisdiction

Mishkoff first claims that the United States District Court for the Eastern District of Michigan lacks personal jurisdiction over him. He asserts that since he is a resident of Texas, the websites were created in Texas, and the mall which is the subject of the websites stands in Texas, a federal court in Michigan cannot exercise jurisdiction over him as a defendant.

Although Mishkoff raises serious doubts in our minds about whether the district court properly held jurisdiction, his motion was ultimately untimely. Although subject-matter jurisdiction can be challenged at any time, Fed. R. Civ. P. 12(h); *see also Ambrose v. Welch*, 729 F.2d 1084, 1085 (6th Cir. 1984), even collaterally after disposition, *see* Fed. R. App. P. 60(b)(4), a challenge to personal jurisdiction must be raised in the first responsive pleading or be waived. Fed. R. Civ. P. 12(h)(1); *see, e.g., Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994); *In Re Wolverine Radio Co.*, 930 F.2d 1132, 1137 n.5 (6th Cir. 1991). Mishkoff did not raise the issue of personal jurisdiction in his original answer.

Mishkoff asks this court for leeway, in light of the fact that he was originally litigating this case pro se. Unfortunately, as the district court stated, there is no legal basis for so doing. This is not to say that this Court will never grant leeway to a pro se party, but Mishkoff has not presented the kind of extraordinary circumstances that would warrant such action. Accordingly, we find that Mishkoff has waived any challenge to personal jurisdiction.

### III. Analysis

Mishkoff claims the injunctions preventing his use of the domain name "shopsatwillowbend.com" and the five "complaint names" are inappropriate because Taubman has not demonstrated a likelihood of success on the merits and because the orders represent a prior restraint on his First Amendment right to speak.

### A. Standard of Review

We review the district court's grant of a motion for a preliminary injunction for abuse of discretion. *Marchwinski v. Howard*, 309 F.3d 330, 333 (6th Cir. 2002); *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997). "A district court abuses its discretion when it relies on clearly erroneous findings of fact . . . or when it improperly applies the law or uses an erroneous legal standard. Under this standard, this court must review the district court's legal conclusions de novo and its factual findings for clear error." *Owner-Operator Indep. Drivers Ass'n v. Bissell*, 210 F.3d 595, 597 (6th Cir. 2000).

We have held that an injunction is proper in trademark cases where:

1) There is a likelihood of success on the merits;
2) There is the potential for irreparable harm;
3) There is the potential of adverse public impact;
4) Potential harm to the plaintiff outweighs the potential harm to the defendant.

*See Rock and Roll Hall of Fame and Museum Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998). None of these factors, standing alone, is a prerequisite to relief; rather, they must be balanced. *Golden v. Kelsey Harris Co.*, 73 F.3d 648, 653 (6th Cir. 1996); *see also County Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002).

Distance rule can be invoked to curtail his use of "taubmansucks.com," even if use of "taubmansucks.com" would not be infringing otherwise.

In *Broderick*, Judge Denison stated the Safe Distance Rule as follows:

> [The defendants] had organized and built up a business based upon a fraudulent appropriation of what belonged to the plaintiff. To permit them to continue without interruption, and to the full scope of identity permitted to an honest competitor, would be to preserve for them a good will acquired through fraud. The due protection of trade-mark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line– even if that requirement involves a handicap as compared with those who have not disqualified themselves.

*Id.* at 354.[5] So, in spite of Taubman's assertions otherwise, the Safe Distance Rule is likewise founded on a likelihood of confusion standard. The rule simply notes that once an infringer has confused the public, that confusion is not magically remedied by a name change. Instead, the confusion lingers, creating the need for the infringer not only to secure a new non-infringing name (or other infringing characteristic) for his product, but one so far removed from any

---

[5] The rule has its roots even before *Broderick*. In *Coca Cola Co. v. Gay-Ola Co.*, 200 F. 720 (6th Cir. 1912), though not referring to the Safe Distance Rule as such, we held that a soft drink manufacturer, once found to be infringing on Coca-Cola's trademarks, could no longer continue to use any mark which might be found to resemble Coca-Cola — namely unmarked red barrels. This was so even though red barrels in and of themselves would not constitute infringement of a trademark, either in 1912 or under the Lanham Act today. But continued use of the barrels after being found to be an infringer, would have permitted the defendant to continue to capitalize from confusion garnered from the earlier infringement. *Id.* at 723.

*Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). Even so, the other three factors also suggest that a preliminary injunction is not proper. Because Mishkoff is not using Taubman's mark to peddle competing goods, and because any damages would be economic in nature and fully compensable monetarily, we find no potential for irreparable harm to Taubman that should lead us to uphold the injunctions. *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)). Moreover, absent a likelihood of confusion, we find no negative impact on the public interest caused by Mishkoff's use. In fact, due to the Free Speech concerns present, we find the potential for irreparable harm to Mishkoff more likely, and that the public would be negatively impacted, should we *not* dissolve the injunctions. *See Overstreet*, 305 F.3d at 578 (stating that the potential for irreparable harm is present when it is constitutional rights that are being enjoined); *see also Connection Distrib. Co.*, 154 F.3d at 288 (stating that the loss of constitutional rights for even a minimal amount of time constitutes irreparable harm).

Lastly, although no economic harm will accrue to Mishkoff should he be prevented from maintaining his sites, there is little potential harm to Taubman, or any other party, as well, because Mishkoff is not a competitor in the marketplace. Accordingly, upon a balancing of the factors for injunctive relief, we dissolve both injunctions.

### 3. The Safe Distance Rule

Lastly, Taubman argues that the Safe Distance Rule, a little used tenet which pre-dates the Lanham Act by nearly twenty years, applies to bar Mishkoff's use of Taubman's mark on his "complaint site." The Safe Distance Rule was created to prevent known infringers from using trademarks whose use by non-infringers would not necessarily be actionable. *See Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353 (6th Cir. 1930). Taubman insists that since Mishkoff has infringed its mark on his "shopsatwillowbend.com" site, the Safe

### B. Propriety of the Injunctions

### 1. Likelihood of Success on the Merits

The likelihood of success of Taubman's claim rests with the language of the Lanham Act, 15 U.S.C. § 1114(1), which imposes liability for infringement of trademarks on:

Any person who shall, without the consent of the registrant
  a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

Mishkoff proposes that, regardless of whether his use of Taubman's marks violates the Lanham Act, any injunction prohibiting his use violates the Constitution as a prior restraint on his First Amendment right of Free Speech. Since Mishkoff has raised Free Speech concerns, we will first explain the interrelation between the First Amendment and the Lanham Act. First, this Court has held that the Lanham Act is constitutional. *Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108, 111-12 (6th Cir.1995) (stating that reach of Lanham Act is limited so as to be constitutional); *see also Seven-Up v. Coca-Cola Co.*, 86 F.3d 1379, 1383 n.6 (5th Cir. 1996). The Lanham Act is constitutional because it only regulates commercial speech, which is entitled to reduced protections under the First Amendment. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980) (stating that regulation of commercial speech is subject only to intermediate scrutiny). Thus, we must first determine if Mishkoff's use is commercial and therefore within the jurisdiction of the Lanham Act, worthy of lesser First Amendment protections.

If Mishkoff's use is commercial, then, and only then, do we analyze his use for a likelihood of confusion. If Mishkoff's use is also confusing, then it is misleading commercial

speech, and outside the First Amendment. *See* 134 Cong. Rec. 31, 851 (Oct. 19, 1988) (statement of Rep. Kastenmeier) (stating that § 43 of the Lanham Act only affects misleading commercial speech); *cf. Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 & n. 24 (1976) (stating that misleading commercial speech is not protected by the First Amendment); *Bonito Boats Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 157 (1989) (stating that a trademark owner has at best a quasi-property right in his mark, and can only prevent its use so as to maintain a confusion-free purchasing public) (quoting *Crescent Tool Co. v. Kilborn & Bishop Co.*, 247 F. 299, 301(2d Cir. 1917) (L. Hand, J.)).

Hence, as per the language of the Lanham Act, any expression embodying the use of a mark not "in connection with the sale . . . or advertising of any goods or services," and not likely to cause confusion, is outside the jurisdiction of the Lanham Act and necessarily protected by the First Amendment. Accordingly, we need not analyze Mishkoff's constitutional defenses independent of our Lanham Act analysis. With this backdrop in mind, we proceed to analyze the nature of the two websites.

### a. November 9 Injunction — The "shopsatwillowbend" Website

In regard to the first website, "shopsatwillowbend.com," Mishkoff argues that his use is completely non-commercial and not confusing, and therefore speech entitled to the full protections of the First Amendment. Taubman offers three arguments that Mishkoff is using its name commercially to sell or advertise goods or services. First, Mishkoff had a link to a site owned by Hartley's blouse company, "shirtbiz.com." Second, he had a link to his own site for his web design company, Webfeats. Third, Mishkoff had accepted a $1000 offer to relinquish the name to Taubman.

Although Mishkoff claims his intention in creating his website was non-commercial, the proper inquiry is not one of intent. *Daddy's Junky Music Stores, Inc. v. Big Daddy's*

Following *Planned Parenthood*, Taubman argues that all cybergriping sites are per se commercial and "in connection with the sale of goods." However, *Planned Parenthood*, as an unpublished district court opinion, is not binding on this Court, and is nonetheless distinguishable. Even if Mishkoff's use is commercial, it must still lead to a likelihood of confusion to be violative of the Lanham Act. 15 U.S.C. § 1114(1). In *Planned Parenthood*, the defendant used the plaintiff's trade name as a domain name, without the qualifying moniker "sucks," or any other such addendum to indicate that the plaintiff was not the proprietor of the website. In contrast, "taubmansucks.com" removes any confusion as to source. We find no possibility of confusion and no Lanham Act violation.

We find that Mishkoff's use of Taubman's mark in the domain name "taubmansucks.com" is purely an exhibition of Free Speech, and the Lanham Act is not invoked. And although economic damage might be an intended effect of Mishkoff's expression, the First Amendment protects critical commentary when there is no confusion as to source, even when it involves the criticism of a business. Such use is not subject to scrutiny under the Lanham Act. In fact, Taubman concedes that Mishkoff is "free to shout 'Taubman Sucks!' from the rooftops. . . ." Brief for Respondent, at 58. Essentially, this is what he has done in his domain name. The rooftops of our past have evolved into the internet domain names of our present. We find that the domain name is a type of public expression, no different in scope than a billboard or a pulpit, and Mishkoff has a First Amendment right to express his opinion about Taubman, and as long as his speech is not commercially misleading, the Lanham Act cannot be summoned to prevent it.

### 2. The Remaining Injunctive Factors

When, as here, a preliminary injunction would infringe upon a constitutional right, the likelihood of success on the merits is often the determinative factor. *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 710 (6th Cir. 2002); *Connection*

placed a hyperlink to Taubman's site within the dislcaimer. We find this measure goes beyond even what was done by the defendant in *Holiday Inns*. There, a customer who reached the defendant's hotline in error had to hang up and redial the correct Holiday Inns number. *Id.* Here, a misplaced customer simply has to click his mouse to be redirected to Taubman's site. Moreover, like *Holiday Inns*, the customers who stumble upon Mishkoff's site would otherwise have reached a dead address. They would have received an error message upon typing "shopsatwillowbend.com," simply stating that the name was not a proper domain name, with no message relating how to arrive at the official site. Hence, Mishkoff's website and its disclaimer actually serve to re-direct lost customers to Taubman's site that might otherwise be lost. Accordingly, we find no likelihood that a customer would be confused as to the source of Taubman's and Mishkoff's respective goods.

### b. December 7 Injunction — The "sucks" Site

In regard to Mishkoff's "complaint site," Taubman claims that Mishkoff's use is necessarily "in connection with the sale of goods" because his intent behind the use of the names "taubmansucks.com," *et al.*, is to harm Taubman economically.

In *Planned Parenthood Fed'n of Amer., Inc. v. Bucci*, No. 97 Civ. 0629, 1997 WL 133313 (S.D.N.Y. March 24, 1997), *aff'd*, No. 97-7492, 1998 WL 336163 (2d Cir. Feb. 9, 1998), the defendant usurped the domain name "plannedparenthood.com" and created a website displaying anti-abortion pictures and pro-life messages in clear contradiction of the plaintiff's stated mission. *Id.* at *1. The court there found that, although not selling or advertising any goods, the defendant's use of Planned Parenthood's mark was commercial because he had used plaintiff's mark and attempted to cause economic harm. *Id.* at *4. (noting that Lanham Act is applicable because "defendant's action in appropriating plaintiff's mark has a connection to *plaintiff's* distribution of its services).

*Family Music Center*, 109 F.3d 275, 287 (6th Cir. 1997). In that sense, the Lanham Act is a strict liability statute. *See Hard Rock Café Licensing Corp. v. Concession Servs, Inc.*, 955 F.2d 1143, 1152 n. 6 (7th Cir. 1992). If consumers are confused by an infringing mark, the offender's motives are largely irrelevant. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)). We believe the advertisements on Mishkoff's site, though extremely minimal, constituted his use of Taubman's mark "in connection with the advertising" of the goods sold by the advertisers. This is precisely what the Lanham Act prohibits.

However, Mishkoff had at least removed the shirtbiz.com link prior to the injunction. A preliminary injunction is proper only to prevent an on-going violation. *See, e.g. Hecht Co. v. Bowles*, 321 U.S. 321, 329-30 (1944) (recounting the historical role of courts of equity and stating that purpose of injunctive relief is "to deter, not to punish"). As long as Mishkoff has no commercial links on either of his websites, including links to shirtbiz.com, Webfeats, or any other business, we find no use "in connection with the advertising" of goods and services to enjoin, and the Lanham Act cannot be properly invoked.[3]

Taubman's assertion that its offer to buy the domain name "shopsatwillowbend.com" from Mishkoff qualifies Mishkoff's use of the mark as "in connection with the sale of goods" is meritless. Although other courts have held that a so-called cybersquatter, who registers domain names with the intent to sell the name to the trademark holder, uses the mark "in connection with the sale of goods," they have also limited

---

[3] Mishkoff sent a letter to Taubaman's attorneys on August 10, 2001, referencing the removal of the shirtbiz.com link, and declaring that Mishkoff "will not place any advertising of any kind on the site in the future." It is unclear whether Mishkoff also removed the Webfeats link at this time. To be clear, we also find the Webfeats link to be "use in connection with the advertising of goods and services" which likewise must remain removed to avoid a finding of commerciality.

their holdings to such instances where the defendant had made a habit and a business of such practices. *See, e.g., E & J Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 270 (5th Cir. 2002) (noting that defendant had made a business practice of selling domain names on eBay for no less than $10,000); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998).

In *Panavision*, the defendant, Toeppen, purchased and offered to sell the name "panavision.com" to Panavision for $13,000. *Id.* at 1318. Evidence showed that Toeppen had attempted similar deals with a myriad of other companies, ranging from Delta Airlines to Eddie Bauer. *Id.* at 1319. The Ninth Circuit found Toeppen's intent to sell the domain name relevant in determining that his creation of the site was a commercial use of Panavision's mark. *Id.* at 1325. In contrast, not only has Mishkoff not made a practice of registering and selling domain names, but he did not even initiate the bargaining process here. Although Taubman's counsel intimated at oral argument that Mishkoff had in fact initiated the negotiation process, correspondence in the record supports the opposite conclusion, and shows that Taubman first offered Mishkoff $1000 to relinquish the site on August 16, 2001, and Mishkoff initially accepted it under threat of litigation. Hence, this case is distinguishable from *Panavision*. There is no evidence that Mishkoff's initial motive in selecting Taubman's mark was to re-sell the name. Therefore, we hold his use of the name "shopsatwillowbend.com" is not "in connection with the sale of goods."

Even if Mishkoff's use is commercial speech, i.e., "in connection with the sale . . . or advertising of any goods or services," and within the jurisdiction of the Lanham Act, there is a violation only if his use also creates a likelihood of confusion among customers. 15 U.S.C. § 1114(1). Moreover, the only important question is whether there is a likelihood of confusion *between the parties' goods or services*. *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002). Under Lanham Act jurisprudence, it is irrelevant whether

customers would be confused as to the origin of the websites, unless there is confusion as to the origin of the respective products. *See also Daddy's Junky Music Stores*, 109 F.3d at 280.

Since its inception, Mishkoff had always maintained a disclaimer on the website, indicating that his was not the official website. In *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619 (6th Cir. 1996), we found the existence of a disclaimer very informative, and held that there was no likelihood of confusion, partly on that basis.

In *Holiday Inns*, the plaintiff hotel chain used the phone number 1-800-HOLIDAY for its guest room reservation hotline. Holiday Inns claimed a Lanham Act violation when the defendant company, a business that profited by taking reservations for several hotel chains, used the phone number 1-800-H0LIDAY (with a zero instead of an "O") in order to take advantage of any calls misdialed by customers seeking Holiday Inns' hotline. We found no Lanham Act violation, partly because the defendant played an unmistakable disclaimer upon answering each call, explaining that it was unaffiliated with Holiday Inns, and providing customers with Holiday Inns' correct phone number. *Id.* at 621. We found that the defendant was, in fact, directing business to Holiday Inns that otherwise would have been lost, and although some callers chose to do business with the defendant, others hung up and called Holiday Inns. Had it not been for defendants' service, Holiday Inns would likely never have recovered many customers who had misdialed. *Id.* at 625.

We find the analysis here indistinguishable from the disclaimer analysis in *Holiday Inns*.[4] Mishkoff has placed a conspicuous disclaimer informing customers that they had not reached Taubman's official mall site. Furthermore, Mishkoff

---

[4] In *Holiday Inns*, the defendant did not actually use the plaintiff's trademark, "Holiday," but used the most common "misspelling" of it. Accordingly, we also found no infringement in *Holiday Inns* because there was no "use" of the plaintiff's mark.