**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1238
_____

MICHAEL KONOWICZ, a/k/a Michael Phillips;
ISARITHIM LLC,
Appellants

v.

JONATHAN P. CARR;
SEVERE NJ WEATHER, LLC, d/b/a Weather NJ;
WEATHER NJ, LLC, d/b/a Weather NJ
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:15-cv-06913)
District Judge: Honorable Michael A. Shipp
_____

Submitted on November 12, 2020

Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit Judges*.

(Filed: December 8, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Michael Konowicz appeals the District Court's summary judgment in favor of Jonathan Carr and affiliated entities. We will affirm in part and reverse in part.

I

Konowicz and Carr are weather aficionados and rivals. A self-described "professional, accredited meteorologist," App. 21, Konowicz maintains a website and various social media platforms, operating under the name "theWeatherboy."[1] He has a Certificate in Broadcast Meteorology from Mississippi State University (MSU) and is a member of the American Meteorological Society (AMS). Carr describes himself as an amateur weather enthusiast. Since 2010, he has operated Weather NJ (formerly Severe NJ Weather), which provides online weather forecasting services through its website and social media platforms. Carr has some 225,000 followers as a result of his forecasting hobby.

This federal case arises out of social media barbs between Carr and Konowicz. From December 2014 to June 2015, Carr wrote a series of Twitter posts attacking Konowicz's education, qualifications, and experience. Carr also published an article, *Beware of the fake "Team of Meteorologists,"* in which he repeated (and expanded on) several assertions made in his earlier tweets.

---

[1] Although Konowicz has since assigned the trademark for Weatherboy to Isarithm LLC, references to Weatherboy herein refer to Konowicz in his individual capacity.

In response to the Twitter posts and the article, Konowicz sent Carr a cease-and-desist letter in July 2015. The letter accused Carr of spreading "false statements of fact concerning [Konowicz]," and labeled Carr's allegedly defamatory statements "categorically false." App. 846–47. Konowicz also provided Carr a copy of Konowicz's MSU certificate with the letter. Konowicz demanded Carr "issue a full and complete retraction" and "take down [his] online defamatory statements." App. 849. Carr did neither.

In September 2015, Konowicz sued Carr for defamation, unfair competition, and violating the Lanham Act. Carr filed an answer and a counterclaim against Konowicz for defamation. The District Court granted Carr summary judgment on Konowicz's claims and granted Konowicz summary judgment on Carr's counterclaim. Only Konowicz appealed.[2]

## II

### A

Konowicz made two arguments in the District Court: (1) Carr originally published his statements with actual malice—*i.e.*, "knowledge that [they] w[ere] false or with reckless disregard of whether [they] w[ere] false or not," *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); and (2) the statements were republished with actual malice. On appeal, Konowicz focuses on the latter point, arguing that Carr's receipt of the cease-and-

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). We exercise jurisdiction under 28 U.S.C. § 1291.

desist letter provided him "notice of the falsity of his claims." Konowicz Br. 36. By republishing the statements on his website after receiving the letter, Konowicz argues, Carr acted with actual malice.

At summary judgment, the appropriate question was "whether the evidence in the record could support a reasonable jury finding . . . that [Konowicz] has shown actual malice by clear and convincing evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986). To make that determination, the District Court had to consider each allegedly actionable statement. We do the same here.

1

The first statements under review were made in December 2014. In response to a third party's Twitter thread questioning the identity of Weatherboy, Carr wrote: "Real name Michael Konowicz. No degree or AMA record. fake audience."[3] App. 439. Konowicz argues that because he provided Carr with a copy of his MSU certificate and his AMS membership number, a jury must determine whether Carr acted with actual malice when he republished these statements. Carr responds that a certificate is not the same as a "degree," and that he continued to believe his statement even after receiving the cease-and-desist letter.

Because we look to the speaker's subjective understanding of the truth or falsity of a statement when considering actual malice, *see St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), we agree with Carr and the District Court that Carr's "no degree" comment

---

[3] Both parties agree Carr meant to type "AMS."

lacks clear and convincing evidence of actual malice. *See Anderson*, 477 U.S. at 256. Knowledge of the certificate would not have led Carr to possess a "high degree of awareness of [the] probable falsity" of his claim because he reasonably believed that Konowicz's certificate is not a "degree." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

As for the claim that AMS had no record of Konowicz, the District Court found that even though Konowicz "provided some objective evidence to Carr that Konowicz [held] at least one type of . . . membership or accreditation" with AMS, this did not raise a genuine issue regarding actual malice. App. 1189. We agree.

Although the cease-and-desist letter provided Carr with Konowicz's AMS membership number as well as a link to a search feature on AMS's website, such evidence does not create a genuine dispute as to actual malice. Under Carr's reasonable subjective belief, "AM[S] record" referred to records of official accreditation, not a more general record of membership. While Carr easily could have verified Konowicz's general affiliation with the organization, the evidence provided did not prove official accreditation. Republication of the statement in light of the cease-and-desist letter did not, therefore, constitute actual malice.

Finally, with respect to the claim that Konowicz had a "fake audience," we agree with the District Court that there was no evidence of actual malice. Carr had many reasons for believing that Konowicz's audience was largely composed of fake accounts. The cease-and-desist letter did little to refute Carr's repeated claims to that effect. So Carr was not put on notice of the "probable falsity" of his statement, *Garrison*, 379 U.S.

5

at 74, and Konowicz failed to show actual malice regarding Carr's "fake audience" claims.[4]

2

In February 2015, Carr warned his Twitter followers to be "careful of Weatherboy Weather. Total fraud. Have unsettling proof." App. 384. When pressed for proof, Carr responded on the same message thread: "check records on Michael Konowicz. Not a pro met. Not a member of AMS." *Id.* As with the December statement claiming Konowicz had "No degree or AM[S] record," App. 439, Konowicz argues Carr's republication of these statements after receiving his certificate and AMS membership number constitutes clear and convincing evidence of actual malice. We disagree.

The District Court did not err when it held that Carr's republication of these statements did not raise an actual malice issue for the jury. As the Court noted, the parties "disagree[d] over the operative portion of the AMS's definition of meteorologist." App. 1187. Carr relied on this definition: "[a] meteorologist is an individual with specialized education . . . most typically in the form of a bachelor's degree or higher." *Id.* at 1187–88. Carr's statement was not made with actual malice because Konowicz's certificate is not "a bachelor's degree or higher." *Id.*

We likewise agree with the District Court that the claim Konowicz was not a "member" of AMS does not create a genuine dispute as to actual malice. As Carr

---

[4] Carr references Konowicz's "fake audience" repeatedly. Because Konowicz never offers clear and convincing evidence to support a finding of actual malice, the analysis for each reference is identical.

understood the term, "membership" does not encompass Konowicz's generic, non-credentialed participation in the organization. On Carr's understanding, only Certified Broadcast Meteorologist and Certified Consulting Meteorologist AMS accreditations qualify as "membership." Here again, the cease-and-desist letter did not invalidate Carr's reasonable understanding, so Konowicz cannot meet the clear-and-convincing threshold to show Carr made the statement with a "high degree of awareness of [its] probable falsity." *Garrison*, 379 U.S. at 74.

3

Carr continued to make allegedly defamatory statements in March 2015. After Weatherboy wrote that United Airlines invited him to its headquarters in Chicago to study its winter weather operations, Carr responded with a series of four tweets, stating: "Chicago story fake. No names. No credentials. No supporting media. Shots similar to other images on Google images"; "Keep sponsoring fake articles to fake audience while impersonating a fake team of meteorologists. #StayClassy"; "541 likes on a sponsored article to a fan-base of 250k. Sorry, that proves dirty pool. For real unparalleled trust and reach see . . . my page"; and "just some guy impersonating a team of real meteorologists practicing horrible journalism." App. 41.

Konowicz cites his cease-and-desist letter as evidence that contradicts Carr's claims that Konowicz's "team of meteorologists" was "fake." We are unpersuaded.

The cease-and-desist letter states: "*Weatherboy Weather*[] is indeed a team effort, from other meteorologists, photographers, designers, and staff." App. 847. As the District

7

Court noted, however, that assertion did not put Carr on notice that his statement was false—it put him on notice that he and Konowicz disagreed. While Konowicz did eventually provide proof that he contracted with two independent meteorologists, this "team" evidence "only came out during discovery." App. 1189. Because this evidence was adduced well after the statement was made, it does not suggest Carr knew the falsity of his statement when he republished it.

Konowicz also argues he provided clear and convincing evidence that his trip to Chicago was real, so Carr republished the statement with actual malice. Konowicz included several photographs in a second letter sent to Carr in February 2016—four months after Konowicz filed suit and three months after the republication at issue. Konowicz claims these photographs show United invited him to Chicago. We agree with the District Court that these photographs are not clear and convincing evidence of actual malice because they would not cause Carr to understand his statement to be "probabl[y] fals[e]" at the time of republication. *See St. Amant*, 390 U.S. at 731; *see also Gertz v. Welch*, 418 U.S. 323, 334 n.6 (1974) (equating "reckless disregard of the truth" with "subjective awareness of probable falsity"). As Carr explained, the photographs—which lack dates or identifying features—"are merely evidence that [Konowicz] was at some airport at some time for some purpose." Carr Br. 45.

4

Finally, in June 2015, Carr published an article on his website essentially repeating several of his prior statements. App. 43–47. Specifically, Konowicz draws our attention

8

to one line: "The American Meteorological Society (AMS) currently has zero-evidence of him." App. 116; Konowicz Br. 37. The District Court held that Carr's republication of this statement after receipt of the cease-and-desist letter did not create a jury question as to actual malice. We disagree.

Unlike Carr's claim as to AMS's lack of an official accreditation record of Konowicz, *see supra* Section II-A-1, the claim AMS has "zero-evidence of [Konowicz]" is broader, encompassing even general, non-accreditation membership in AMS. As previously noted, however, the cease-and-desist letter provided Carr with Konowicz's AMS membership number as well as a link to a search feature on AMS's website, so Carr easily could have verified Konowicz's general membership and affiliation with the organization.

Carr cannot "automatically insure a favorable verdict by testifying that he published with a belief that the statements were true." *St. Amant*, 390 U.S. at 732. Since Carr received explicit evidence contradicting his sweeping statement, the decision to nevertheless republish creates a jury question as to whether Carr acted with actual malice when he said "The American Meteorological Society (AMS) currently has zero-evidence of [Konowicz]." App. 116. *See, e.g.*, *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1090 (3d Cir. 1988) ("Where the defendant finds . . . apparently reliable information that contradicts [his] libelous assertions, but nevertheless publishes those statements anyway, the *New York Times* actual malice test can be met.").

B

Konowicz also argues the District Court erred in denying his Lanham Act and unfair competition claims. We address the two together because "the Lanham Act is derived generally and purposefully from the common law tort of unfair competition, and its language parallels the protections afforded by state common law." *Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994); *see also Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317 (D.N.J. 2006) ("[T]he elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition . . . under New Jersey . . . law.").

We agree with the District Court that Carr's statements are not actionable under the Lanham Act because they are not commercial speech. *See, e.g.*, *Boule v. Hutton*, 328 F.3d 84, 90 (2d Cir. 2003) (holding that a "statement must be (1) commercial speech" to fall under the Lanham Act (internal quotation marks omitted)); *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003) ("The Lanham Act is constitutional because it only regulates commercial speech, which is entitled to reduced protections under the First Amendment.").

Carr's statements from December 2014, March 2015, and June 2015 are not commercial speech because they do not "refer to a specific product or service." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67 (1983)). Carr's remaining statement—"The American Meteorological Society (AMS) currently has zero-evidence

10

of [Konowicz]," App. 116—appeared within an article that perhaps served as an advertisement and referred to Carr's services. We agree with the District Court, however, that Konowicz has failed to establish Carr's economic motivation such that his speech should be actionable under the Lanham Act. Although Carr admits that he makes roughly $1,000 a month from his weather services, the District Court found that Konowicz failed to show these profits—as opposed to myriad other potential motivations—prompted Carr to publish the article or make the statement.

It is true, of course, that courts have found "[t]hese [*Bolger* factors] are not exclusive . . . and the presence or absence of any of them does not necessitate a particular result." *Radiance Foundation, Inc. v. N.A.A.C.P.*, 786 F.3d 316, 323 (4th Cir. 2015). They are, nevertheless, useful in helping courts make the "'commonsense' distinction between speech proposing a commercial transaction . . . and other varieties of speech." *Bolger*, 463 U.S. at 64. Recognizing that "we err on the side of fully protecting speech when confronted with works near the line dividing commercial and noncommercial speech," *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1018 (3d Cir. 2008), we perceive no error in the District Court's "'commonsense' distinction" based on the absence of proof of economic motivation. *Bolger*, 463 U.S. at 64.

Because Carr's statements were not commercial speech, Carr was entitled to summary judgment on Konowicz's Lanham Act and unfair competition claims.

11

*     *     *

For the reasons stated, we will affirm the District Court's judgment regarding all but one of Carr's allegedly defamatory statements. We will vacate and remand for a trial regarding "The American Meteorological Society (AMS) currently has zero-evidence of [Konowicz]." We will affirm the District Court's judgment for Carr on Konowicz's Lanham Act and unfair competition claims.