**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Wooster Floral & Gifts, L.L.C. v. Green Thumb Floral & Garden Ctr., Inc.*, **Slip Opinion No. 2020-Ohio-5614.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5614

WOOSTER FLORAL & GIFTS, L.L.C., APPELLANT, *v.* GREEN THUMB FLORAL & GARDEN CENTER, INC., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Wooster Floral & Gifts, L.L.C. v. Green Thumb Floral & Garden Ctr., Inc.*, Slip Opinion No. 2020-Ohio-5614.]**

*Civil law—Deceptive Trade Practices Act—Customer confusion must be measured based on a customer's confusion about the source of the goods that are offered for sale—Court of appeals' judgment affirmed.*

(No. 2019-0322—Submitted May 12, 2020—Decided December 15, 2020.)

APPEAL from the Court of Appeals for Wayne County, No. 17AP0026, 2019-Ohio-63.

_____

**DEWINE, J.**

{¶ 1} This case involves a dispute between two flower shops about the use of a domain name. Green Thumb Floral & Garden Center, Inc. ("Green Thumb") owns the domain name www.woosterfloral.com. Internet users who click on that

address are directed to Green Thumb's home page. This does not sit well with one of its competitors, Wooster Floral & Gifts, L.L.C., which filed a lawsuit under Ohio's Deceptive Trade Practices Act, seeking to block Green Thumb from using the woosterfloral.com address.

{¶ 2} For Green Thumb's actions to constitute a deceptive trade practice, its use of the domain name must create a likelihood of customer confusion about "the source, sponsorship, approval, or certification of goods or services." R.C. 4165.02(A)(2). We find no evidence of such customer confusion. Green Thumb's website makes it perfectly clear to internet users who end up on that site that they are ordering goods from Green Thumb. Because the court below saw things pretty much the same way, we affirm its judgment.

## I. BACKGROUND

### A. Wooster Floral & Gifts acquires the trade name "Wooster Floral" from its predecessor but not the domain name "woosterfloral.com"

{¶ 3} Wooster Floral, L.L.C., was a flower and gift shop that did business in Wooster, Ohio, from 2000 to 2015. The business owned a few domain names, including www.woosterfloralandgifts.com and www.woosterfloral.com. In late 2014, the shop's owner, Kimberly Gantz, decided to close the business. Toward that end, she did not renew the registration of the "woosterfloral.com" domain.

{¶ 4} After Gantz announced her intention to shut down, the store's manager, Katrina Heimberger, expressed an interest in buying the business. Heimberger and Gantz entered into a purchase agreement in January 2015. The contract specified that Heimberger was "not purchasing the business" but rather certain assets and inventory, including the use of the name Wooster Floral, for $1.

{¶ 5} Heimberger subsequently recorded the articles of organization for Wooster Floral & Gifts, L.L.C., with the Ohio secretary of state, as well as an assignment of the trade name "Wooster Floral, L.L.C.," to herself. Gantz then dissolved Wooster Floral in late 2015.

{¶ 6} Green Thumb is a competing floral and gift shop in Wooster. It has been in business for more than 50 years. At the end of 2014, Green Thumb's owner, Claudia Grimes, learned that Gantz was about to close Wooster Floral. Discovering that "woosterfloral.com" was available, Grimes purchased the name from a domain-name registrar in January 2015 and started using it to redirect internet users to Green Thumb's website: www.greenthumbfloralandgifts.com. Green Thumb uses several other domain names for the same purpose, including "woosterflowers.com" and "woosterflorist.com."

{¶ 7} When Heimberger started Wooster Floral & Gifts, she knew that Gantz no longer owned the "woosterfloral.com" domain and that Grimes had purchased it. Nonetheless, Heimberger asked Grimes to give up the domain name. After some back and forth, Grimes offered to sell the domain name to Heimberger for $2,500, but Heimberger refused, finding the price too steep.

### B. Wooster Floral & Gifts sues the owner of the domain name "woosterfloral.com"

{¶ 8} In 2016, Wooster Floral & Gifts sued Green Thumb, alleging trademark infringement in violation of R.C. 1329.65 and a violation of the Deceptive Trade Practices Act, R.C. 4165.02(A)(2). Wooster Floral & Gifts sought an injunction requiring Green Thumb to surrender the domain name as well as damages and attorney's fees.

{¶ 9} The case proceeded to a bench trial. At trial, Wooster Floral & Gifts presented screenshots of the redirected website taken in early 2015. The landing page of the site looked like this:



{¶ 10} The only evidence that Wooster Floral & Gifts offered that any customer had actually been confused concerned a negative review posted on Wooster Floral & Gifts' Google Plus page. Heimberger testified that she responded to the review, writing that "[i]t sounds like you may have ordered your flowers from 1-800-flower.com and that another business filled this order." Grimes admitted that Green Thumb had filled the order that was the subject of the negative review. But she also testified that she had received that order through BloomNet, a wire service, not through www.woosterfloral.com. The customer who wrote the review did not testify.

{¶ 11} The trial court ruled in favor of Green Thumb, concluding that Wooster Floral & Gifts' trademark infringement claims failed because it did not have a registered trademark. Wooster Floral & Gifts did not challenge this holding on appeal. Regarding the claims under the Deceptive Trade Practices Act, the trial court found that Wooster Floral & Gifts possessed a valid trade name, "Wooster Floral," but could not enjoin others from using that name unless there was proof of likelihood of confusion. The court found that Green Thumb's use of the domain

name was unlikely to cause confusion as to the source of goods or services, explaining that "[t]he home page is clearly identified as 'Green Thumb Floral' " and that there is no use of the trade name "Wooster Floral" within the website.

{¶ 12} Wooster Floral & Gifts appealed, challenging the finding that there was no violation of the Deceptive Trade Practices Act. The Ninth District Court of Appeals affirmed. It found nothing within Green Thumb's website that would suggest a customer might be confused about which company is providing the goods for sale. One judge dissented, opining that there was a likelihood of confusion based on the application of an eight-factor test utilized by the Sixth Circuit Court of Appeals in determining the likelihood of confusion for claims under the federal Lanham Act. 2019-Ohio-63, 118 N.E.3d 513, ¶ 16 (Callahan, J., dissenting), citing *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.1982).

{¶ 13} We accepted Wooster Floral & Gifts' appeal on the following proposition of law:

> A competing business owner's use of a competitor's legally valid trade name in a domain name to divert consumers to the competing business's website is a deceptive trade practice under R.C. 4165.02(A)(2) and is analyzed for likelihood of confusion at the time the trade name is used in the domain name, not by the content on the competing business's website.

*See* 155 Ohio St.3d 1455, 2019-Ohio-1759, 122 N.E.3d 216.

## II. ANALYSIS

{¶ 14} R.C. 4165.02(A)(2) provides that "[a] person engages in a deceptive trade practice when, in the course of the person's business," the person "[c]auses likelihood of confusion or misunderstanding as to the source, sponsorship,

approval, or certification of goods or services." If a party is likely to be damaged by a deceptive trade practice under R.C. 4165.02, a court may grant injunctive relief and award actual damages. R.C. 4165.03(A)(1) and (2).

{¶ 15} In the proceeding below, the Ninth District assumed that a party who seeks injunctive relief for a violation of the Deceptive Trade Practices Act must establish a violation by clear and convincing evidence. Wooster Floral & Gifts did not challenge the use of that standard in its merit brief to this court, although it did raise the issue in its reply brief. But, of course, a party cannot raise an issue for the first time in a reply brief. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 179. So we have no occasion to examine the correct burden of proof for a claim under the Deceptive Trade Practices Act. We note, though, that even were we to apply a preponderance of the evidence standard, we would still conclude that Wooster Floral & Gifts has failed to meet its burden to demonstrate customer confusion about the source of goods or services.

**A. The statute requires a likelihood of confusion as to the source of the goods**

{¶ 16} Wooster Floral & Gifts' position is that there is a likelihood of customer confusion because a consumer who opens a web browser and types in "woosterfloral.com" will be directed not to its website but to Green Thumb's website. In its view, the act of redirecting—by itself—creates a likelihood of confusion. Green Thumb counters that the customer is not ultimately confused at all because once he or she arrives at the Green Thumb website, the site makes perfectly clear that one is ordering goods from Green Thumb. Thus, the dispute depends in large part on what kind of confusion the law proscribes: confusion about where the words "woosterfloral.com" typed into a web browser will lead or confusion about who is selling the products that a web user may ultimately choose to purchase.

{¶ 17} The plain language of the statute answers the question. The statute reaches conduct that "[c]auses likelihood of confusion or misunderstanding as to

the source, sponsorship, approval, or certification *of goods or services*." (Emphasis added.) R.C. 4165.02(A)(2). Thus, to run afoul of the statute, there must be a likelihood of confusion about the source of the goods and services not about where a particular domain name might lead.

{¶ 18} Wooster Floral & Gifts has failed to present any such evidence. Under the plain language of the statute, whether internet users are initially confused about the origin of a website does not matter; rather, the plaintiff must show a likelihood of confusion that goes to the source of the goods or services. The redirected website, Green Thumb's home page, clearly demonstrates Green Thumb's name, logo, and address and makes no mention of the trade name "Wooster Floral" within the website. Any reasonable internet user looking at the website can tell that it is Green Thumb that is providing the goods and that there is no indication of sponsorship, approval, or certification of goods by another entity. And a consumer who doesn't want to be there can quickly extricate himself by hitting ←.

{¶ 19} Any likelihood of confusion is further mitigated by the fact that Wooster Floral & Gifts is, at best, a fairly weak trade name.[1] The more distinctive a trade name is, the stronger it is and the greater the likelihood of confusion and the scope of protection. 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, Section 11:73 (5th Ed.2018); 1 McCarthy at Section 9:1. Wooster Floral is not a distinctive name like Kodak or John Deere that a customer strongly and immediately associates with a particular brand. *See generally Abercrombie &*

---

1. The trial court's conclusion that Wooster Floral is a valid trade name has not been challenged on appeal, so we must assume the correctness of that decision. A trade name is descriptive of the identity of the owner of the business and need not be affixed to the product, although it may serve to identify not only the business but also the product. *Younker v. Nationwide Mut. Ins. Co.*, 175 Ohio St. 1, 5, 191 N.E.2d 145, 148 (1963). In contrast, a trademark is a sign, word or device affixed to a product that identifies the goods of a particular seller and distinguishes them from the goods sold by another. *Id.* The definitions of the two overlap to some extent, and this court has stated that "[t]he basic principles governing trademarks and trade names are the same." *Id.* at 6.

*Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976) (Friendly, J.); *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir.2003). Rather, it is a trade name that is geographically descriptive of the business—Wooster Floral & Gifts is a floral shop in Wooster. Geographically descriptive marks are generally considered weaker than marks that are inherently distinctive. Restatement of the Law 3d, Unfair Competition, Section 21, Comment i, at 232-233 (1995). It is plausible that a customer might type woosterfloral.com into a website because they are looking for Wooster Floral & Gifts' website. But a consumer might also type the address simply because they are looking for a floral shop in Wooster. A reasonable internet user might assume that JohnDeere.com will likely lead to John Deere's website, but that same user is much less likely to assume that woosterfloral.com will lead to a particular flower shop.

{¶ 20} In sum, there is nothing before us to suggest that Green Thumb's use of the woosterfloral.com domain name creates customer confusion about the source, sponsorship, approval, or certification *of goods or services*. *See* R.C. 4165.02(A)(2). Wooster Floral & Gifts has failed to produce evidence of a single consumer that has suffered any such confusion. And nothing in the evidence suggests that any reasonable consumer would be likely to suffer any confusion about the source of the goods listed for sale on Green Thumb's website. Thus, under the plain terms of the Deceptive Trade Practices Act, Wooster Floral & Gifts has failed to establish a violation.

**B. Federal caselaw under the Lanham Act does not help Wooster Floral & Gifts**

{¶ 21} Wooster Floral & Gifts relies primarily on federal cases decided under the Lanham Act that it says support its argument that confusion should be measured at the point in which a person initially types woosterfloral.com into a web browser. We are not convinced that these federal cases lend much assistance to its cause.

**{¶ 22}** The Lanham Act contains several provisions that have been applied in domain-name disputes. Most notably, the Lanham Act contains an explicit anticybersquatting provision that makes a person liable in certain circumstances for the registration or use of a domain name with the bad-faith intent to profit when the domain name contains or is similar to a trademark held by another. 15 U.S.C. 1125(d); *College Savs. Bank v. Florida Prepaid Postsecondary Edn. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Importantly, Ohio's Deceptive Trade Practices Act does not contain a comparable provision.

**{¶ 23}** In addition, two other provisions of the Lanham Act have been applied to domain-name disputes. Section 32(a) of the Lanham Act makes it a violation to use a registered trademark in connection with the sale of goods or services when the use of the mark is likely to create customer confusion. Act of Nov. 29, 1999, ch. 540, 113 Stat. 219, codified at 15 U.S.C. 1114(1). Section 43(a) of the Lanham Act is the provision that is the most similar to Ohio's Deceptive Trade Practices Act, and Wooster Floral & Gifts maintains that it provides for liability on the same terms as the Ohio statute. *Id.*, codified at 15 U.S.C. 1125(a)(1).

**{¶ 24}** That section provides for liability on the part of

> [a]ny person who, on or in connection with any goods or services * * * uses in commerce any word, term, name, * * * or any combination thereof, * * * which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person * * *.

15 U.S.C. 1125(a)(1)(A).

**{¶ 25}** This language is similar in some respects to Ohio's statute but different in other respects. (The most notable difference is the federal statute's explicit reference to the use of any "word, term [or] name.") We are bound by the language of the Ohio statute not by a federal court's interpretation of a federal statute. Thus, while federal cases may provide some guidance in analyzing issues in this area, they offer only that—guidance to the extent that we find their analysis useful.

**{¶ 26}** The guidance that is supplied by the federal cases is not particularly helpful to Wooster Floral & Gifts. The theory advanced by Wooster Floral & Gifts has some similarities to a doctrine adopted by some federal circuits that has come to be termed "initial interest confusion." *See, e.g.*, *Playboy Ents., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir.2004). The idea here is that customer confusion may be shown by the deceptive use of a trade name that sparks a consumer's initial interest in a product, even if that confusion is dispelled before any sale occurs. *Id.* at 1025; *see also* 5 McCarthy, Section 25A:44, at 25A-182 through 25A-187.

**{¶ 27}** Wooster Floral has never explicitly relied upon the initial-interest-confusion doctrine nor has it asked this court to adopt the doctrine. Nevertheless, the dissent seizes on this somewhat controversial theory[2] and insists—without

---

2. The dissent's view that the initial-interest-confusion doctrine "is neither novel nor controversial," dissenting opinion at ¶ 44, is not widely shared. *See, e.g.*, Ritter & Jaffe, *The Uncertain Future of Initial Interest Confusion*, 4 Landslide 55 (2012) ("Initial interest confusion was a controversial doctrine from its inception and remains so today"); Goldman, *Deregulating Relevancy in Internet Trademark Law*, 54 Emory L.J. 507, 559 (2005) ("The 'initial interest confusion' doctrine * * * exemplifies the devolution of trademark law"); Singh, *Abolish Trademark Law's Initial Interest Confusion and Permit Manipulative Internet Search Practices*, 3 J.Bus. Entrepreneurship & L. 15, 31 (2009) ("Initial interest confusion is a flawed doctrine because it does not require a showing of likelihood of confusion, it is superfluous and inefficient, and it is also unnecessary in the Internet context, so courts should not utilize it in evaluating trademark infringement"); Klein & Glazer, *Reconsidering Initial Interest Confusion on the Internet*, 93 Trademark Rep. 1035, 1064 (2003) ("[T]he initial interest confusion doctrine is unnecessary to resolve the cases in which courts have applied the doctrine"); Rothman, *Initial Interest Confusion: Standing at the Crossroads of*

analysis—that we recognize the doctrine. Further, the dissent would have us also adopt an eight-factor test used by the Sixth Circuit in Lanham Act cases and remand this case for application of that test to the initial-interest-confusion theory. *See Frisch's Restaurants, Inc.*, 670 F.2d at 648 (adopting the eight factors used by the Ninth Circuit in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir.1979)).

{¶ 28} Though the dissent cites a few trademark cases in which federal circuit courts have recognized the idea of initial-interest confusion, it fails to acknowledge that the federal circuits largely have found the initial-interest-confusion theory inapplicable in situations like ours where any initial confusion is quickly dissipated once the consumer lands on the website. This is for good reason. Despite the differences in language, the Lanham Act is understood to impose the same customer-confusion requirement as the Ohio statute: there must be "confusion as to the origin of the parties' goods or services." *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir.2002).

{¶ 29} For this reason, even those federal circuit courts recognizing the possibility of liability under such a theory have been reluctant to find a violation of section 32(A) or 43(A) of the Lanham Act in the context of internet-domain-name disputes. This is particularly the case when a website on which a consumer ultimately lands makes its affiliation clear. For example, in a case in which a computer company made use of the domain name clue.com, the First Circuit upheld a trial court's finding that no trademark infringement occurred on a claim brought by the manufacturer of the board game Clue. Because the website's content strongly indicated that the site had little to do with the trademark owner's business,

---

*Trademark Law*, 27 Cardozo L.Rev. 105, 113 (2005) ("Initial interest confusion must be revisited and replaced").

the First Circuit saw no reason to "enter the 'initial interest confusion' thicket." *Hasbro, Inc. v. Clue Computing, Inc.*, 232 F.3d 1, 2 (1st Cir.2000).

{¶ 30} Similarly, in a lawsuit brought by Reverend Jerry Falwell, the Fourth Circuit found no likelihood of confusion in a detractor's use of the domain name Fallwell.com on a "gripe site" established to criticize Falwell. *Lamparello v. Falwell*, 420 F.3d 309, 317-318 (4th Cir.2005). "[E]ven if [it] were to accept the initial interest confusion theory," the court "would not apply [it to] the case at hand." *Id.* at 318. That is because to determine whether a likelihood of confusion exists as to the source of such a site, "a court must look not only to the allegedly infringing domain name, but also the underlying content of the website." *Id.* Because the contents of the website made clear that it was not affiliated with Falwell, there was no likelihood of customer confusion. *Id.* at 311, 318; *see also Passport Health, L.L.C. v. Avance Health Sys. Inc.*, 823 Fed.Appx. 141, 150 (4th Cir.2020) ("As in *Lamparello*, we decline to adopt the [initial-interest-confusion] doctrine here").

{¶ 31} The Ninth Circuit, too, has found little danger of consumer confusion when the content of a website makes its affiliation clear. Outside of the special case of a website domain that consists solely of a trademarked name (e.g., JohnDeere.com), "consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page—if then. This is sensible agnosticism, not customer confusion." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1179 (9th Cir.2010). Indeed, reasonable internet users "fully expect to find that some sites are not what they imagine based on a glance at the domain name or a search engine summary." *Id.*; *see also* 5 McCarthy, Section 25A:44, at 25A-184 ("mere 'diversion' is not the same as 'confusion' ").

{¶ 32} The dissent would like us to remand this case for application of the Sixth Circuit's multifactor test in the context of initial-interest confusion, but the Sixth Circuit has found it unnecessary to apply the multifactor test to domain-name

disputes like this one. Instead, the Sixth Circuit has made clear that the only important question in a domain-name dispute "is whether there is a likelihood of confusion *between the parties' goods or services*." (Emphasis in original.) *Taubman Co. v. Webfeats*, 319 F.3d 770, 776 (6th Cir.2003).[3] Thus, "it is irrelevant whether customers would be confused as to the origin of the websites, unless there is confusion as to the origin of the respective products." *Id.* Similarly, in another domain-name dispute decided just this year, rather than apply the multifactor test, the Sixth Circuit explained "the 'ultimate question' in assessing the likelihood of confusion is 'whether relevant customers are likely to believe that the products or services offered by the parties are affiliated in some way." *Dassault Systèmes, SA v. Childress*, 828 Fed.Appx. 229, 250 (6th Cir.2020), quoting *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir.2003). Applying de novo review to the trial court's denial of a motion for judgment as a matter of law, the Sixth Circuit found it unnecessary to even reference the eight-factor test. It simply held that there was no viable claim because the plaintiff failed to " 'explain why, assuming that such initial confusion were to take place, it would not be instantly dissipated without any harm' once the consumer clicks the * * * link and enters the website." *Id.*, quoting *Groeneveld Transport Efficiency, Inc. v. Lubecore Internatl., Inc.*, 730 F.3d 494, 519 (6th Cir.2013).

{¶ 33} Thus, a review of the federal caselaw lends further support to the result we arrive at from a plain reading of Ohio's Deceptive Trade Practices Act. Customer confusion is measured by whether a reasonable consumer who has landed on Wooster Floral's website is likely to be confused about the source of the goods

---

3. Because the Sixth Circuit in *Webfeats* determined that the defendant's use of his website ultimately did not implicate the Lanham Act, the dissent shrugs off as dicta the court's finding that there was no likelihood of confusion. But the fact that there are two independent reasons for a ruling does not render one of those reasons dicta, especially when the issue considered was one expressly before the court and one which the court had reason to decide—rather than merely opine—upon. *See Wright v. Spaulding*, 939 F.3d 695, 701-702 (6th Cir.2019).

offered for sale on the site. There is no reason in this case to remand for the application of the Sixth Circuit's multifactor test. That test was developed for a "different problem—i.e., for analyzing whether two competing brands' *marks* are sufficiently similar to cause customer confusion [emphasis sic]," *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir.2015), and provides little assistance in this case.[4] Here, the plain terms of the statute are all we need to resolve the question in front of us.

{¶ 34} Under both federal precedent and the plain terms of the Ohio statute, the question is whether a consumer landing on Green Thumb's website is likely to be confused about the entity that will be fulfilling his order. The answer is clearly no. A consumer who buys flowers on Green Thumb's website after initially typing in woosterfloral.com knows full well that his order is going to be fulfilled by Green Thumb. Green Thumb's use of the woosterfloral.com domain name does not violate Ohio's Deceptive Trade Practices Act.

### III. CONCLUSION

{¶ 35} Wooster Floral & Gifts, L.L.C., has failed to demonstrate that Green Thumb's use of the domain name www.woosterfloral.com causes a likelihood of confusion as to the source of goods sold on the website. We thus affirm the judgment below.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY and FISCHER, JJ., concur.

DONNELLY, J., concurs in judgment only.

FRENCH, J., dissents, with an opinion joined by STEWART, J.

---

4. The dissent finds our reliance on *Multi Time Machine* to be "misplaced," since "the case before us is not a keyword-advertising case—it's a trade name case." Dissenting opinion at ¶ 51. That distinction is immaterial here because "the ultimate test" is the same for both: whether a reasonable consumer is likely to be confused as to the origin of the goods. *Multi Time Machine* at 937. That *Multi Time Machine* concerned a keyword-advertising dispute does not change the fact that, as in that case, "[o]ur case can be resolved simply by [an] evaluation of the web page at issue," *id.*

---

**FRENCH, J., dissenting.**

{¶ 36} In this court's first opportunity to address Ohio's Deceptive Trade Practices Act ("DTPA"), specifically R.C. 4165.02, the majority fails to establish a standard for courts to follow when considering whether a party's use of a disputed trade name is likely to cause confusion among consumers about the source of the goods or services. Relying exclusively on the fact that the trade name "Wooster Floral & Gifts" has a geographic component, the majority declares that it is "a fairly weak trade name," and that there can be no source confusion regarding its use. Majority opinion at ¶ 19. In my view, we should adopt the factors outlined in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.1982), to guide the "likelihood of confusion" analysis.

{¶ 37} The majority also rejects the idea that we can measure source confusion at the point when a consumer types a trade name into a web browser, a concept that is generally known as initial-interest confusion. I disagree. Federal courts have recognized initial-interest confusion, and we should recognize it too. Although I agree with the majority that federal courts have set a high bar for plaintiffs to prevail on a claim predicated on initial-interest confusion, I am unwilling to wholly reject the reality that a domain name itself provides source-identifying information or that consumers may be confused when a competitor uses another's trademark or trade name in a domain name. Because the trial court and the appellate court here failed to recognize that appellant, Wooster Floral & Gifts, L.L.C., could base its DTPA claim on appellee Green Thumb Floral & Garden Center, Inc.'s use of Wooster Floral's trade name as a Uniform Resource Locator[5]

---

5. "Uniform Resource Locator" or "URL" is the term used to describe the location of a specific webpage, such that if a specific URL is entered into an Internet browser, a specific website will appear. *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 309 F.Supp.2d 467, 474 (S.D.N.Y.2003) fn. 13, *rev'd on other grounds*, 414 F.3d 400 (2d Cir.2005). A "domain name" typically refers to the URL for the front or home page of a website. *Id.*

("URL"), I would reverse the judgment of the Ninth District Court of Appeals. I would also remand the matter to the trial court for it to consider whether Wooster Floral has proven its DTPA claim against Green Thumb. I therefore dissent from the majority's judgment.

**A. This court should adopt a standard for determining if there is a "likelihood of confusion" to support a DTPA claim**

{¶ 38} In Ohio, a person engages in a deceptive trade practice if in the course of her business, she "[c]auses likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." R.C. 4165.02(A)(2). Section 43(a) of the federal Lanham Act, codified at 15 U.S.C. 1125(a)(1), prohibits a person from using a word or name in commerce that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person," 15 U.S.C. 1125(a)(1)(A). The federal courts and Ohio's appellate courts have recognized that the federal code and state statute are similar in their proscription of trade practices that cause confusion about the source of goods or services, and that they should be interpreted similarly. *See Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1431 (S.D.Ohio 1990) (R.C. 4165.02 is substantially similar to 15 U.S.C. 1125(a) such that an "analysis appropriate for a determination of liability under section 43(a) of the Lanham Act is also appropriate for determining liability under [R.C. 4165.02]"); *Yonoco's Restaurant, Inc. v. Yonoco*, 100 Ohio App.3d 11, 17, 651 N.E.2d 1347 (9th Dist.1994) (R.C. 4165.02 is substantially similar to 15 U.S.C. 1125(a)); *Profusion Indus., L.L.C. v. Chem-Tek Sys., Inc.*, N.D.Ohio No. 5:16-cv-164, 2016 WL 7178731, *3 (Dec. 9, 2016) ("The analysis of an unfair competition claim under Ohio's [DTPA] is the same as for an unfair competition claim under the Lanham Act—likelihood of consumer confusion"); *Enduring Wellness, L.L.C. v. Roizen*, 8th Dist. Cuyahoga No. 108681,

16

2020-Ohio-3180, ¶ 46 (DTPA is substantially similar to the Lanham Act, and Ohio courts apply the same analysis that is applicable to claims commenced under analogous federal law). The focus of the inquiry in a case brought under Ohio's DTPA or the federal Lanham Act is whether the use of the trademark or trade name is "likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir.1997).

{¶ 39} The federal courts and Ohio's appellate courts have considered eight factors to assess the likelihood of consumer confusion when one competitor uses another competitor's trade name commercially: (1) the strength of the plaintiff's mark, (2) relatedness of the goods, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care, (7) the defendant's intent in selecting the mark, and (8) the likelihood of expansion of the product lines. *See Frisch's Restaurants, Inc.*, 670 F.2d at 648; *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 794-795 (6th Cir.2015) (outlining the eight factors and explaining how each factor is applied); *Cesare v. Work*, 36 Ohio App.3d 26, 30, 520 N.E.2d 586 (9th Dist.1987), citing *Frisch's Restaurants, Inc.* at 648; *Leventhal & Assocs., Inc. v. Thomson Cent. Ohio*, 128 Ohio App.3d 188, 197, 714 N.E.2d 418 (10th Dist.1998), citing *Cesare* at 30 and *Frisch's Restaurants, Inc.* As the federal courts have explained, a plaintiff need not show that all, or even most, of the factors are present in any particular case to prevail on its deceptive-trade-practice claim. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988); *see also Daddy's Junky Music Stores, Inc.* at 280 (the factors are interrelated, and not all factors may be helpful in a given case). The factors simply provide a guide for assessing the likelihood of confusion. *Wynn Oil Co.* at 1186.

{¶ 40} Although we implicitly recognized many of the eight factors before the General Assembly enacted Ohio's DTPA, we have not had the opportunity to

adopt the factors or any other standard for assessing the likelihood of consumer confusion for claims brought under Ohio's DTPA. *See Natl. City Bank v. Natl. City Window Cleaning Co.*, 174 Ohio St. 510, 190 N.E.2d 437 (1963) (considering the strength of the business, the distinctiveness of the name, whether the businesses are competitors, and the similarity of the marks in analyzing a common-law trade-name-infringement claim).

{¶ 41} Today, we have the opportunity to adopt a standard for lower courts to apply to DTPA claims, but the majority squanders the opportunity away. The majority appears to consider the strength of Wooster Floral's trade name, considering only its geographic description and whether there is evidence of actual confusion in arriving at its conclusion that Wooster Floral's DTPA claim fails because Wooster Floral has not shown a sufficient likelihood of confusion. But because the majority fails to identify any factors that lower courts may use in analyzing whether the commercial use of another's trade name causes a likelihood of confusion, it leaves unclear how Ohio's courts should analyze these issues in future cases that involve different facts or a stronger trade name. And the majority's reliance on the plain language of the statute—that is, R.C. 4165.02(A)(2)'s reference to "goods and services"—adds nothing to the analysis. Although the ultimate consideration is always whether there is a likelihood of confusion regarding the source of goods or services—no one disputes that—the question the majority fails to answer is: How does a court determine whether there is a likelihood of confusion? In my view, we should answer that question. I would formally adopt the eight factors outlined in *Frisch's Restaurants, Inc.* at 648 for courts to use in analyzing claims brought under Ohio's DTPA alleging that a defendant's use of a plaintiff's trade name causes a likelihood of confusion as to the source of the defendant's goods or services.

**B. A deceptive trade-practice claim may be predicated on initial-interest confusion**

{¶ 42} Wooster Floral argues that the deceptive act here is the use of the Wooster Floral trade name as a domain name to redirect prospective customers to its direct competitor's website. It argues that the deceptive act is already complete by the time the prospective customer arrives at Green Thumb's website, and it is immaterial that Green Thumb's website does not use its trade name. But the majority rejects this initial-interest-confusion argument and concludes that because Green Thumb's website does not reference Wooster Floral, consumers categorically could not be confused about which business would be filling an order when they type Wooster Floral's trade name as a URL and are automatically redirected to Green Thumb's website. Although the majority acknowledges that a "trade name is descriptive of the identity of the owner of the business," majority opinion at ¶ 19, fn. 1, it inexplicably refuses to apply that principle to a trade name that is used in a URL. Rather, the majority draws an arbitrary barrier separating the connotation of the words used in a URL from the source of the goods or services contained on the website to which the URL leads. In doing so, the majority insulates from liability a competitor who misappropriates another's trade name in its URL as long as it does not use the trade name on its website. Under the majority's rationale, there is no value to the words used in a domain name or URL; only the content on the resulting website matters.

{¶ 43} The majority's wholesale refusal to recognize initial-interest confusion would therefore foreclose a similar action even if it involved a strong trade name "like Kodak or John Deere that a customer strongly and immediately associates with a particular brand," majority opinion at ¶ 19, or if the website domain consisted "solely of a trademarked name," majority opinion at ¶ 31. I would recognize that a URL or domain name provides source-identifying information and that a defendant who uses a competitor's trade name in its URL

may cause initial-interest confusion about the source of the goods or services that the defendant is offering.

{¶ 44} Initial-interest confusion "occurs when a consumer is lured to a product by its similarity to a known mark, even though the consumer realizes the true identity and origin of the product before consummating a purchase." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464 (7th Cir.2000); *see also Brookfield Communications, Inc. v. W. Coast Entertainment Corp.*, 174 F.3d 1036, 1062 (9th Cir.1999), quoting *Dr. Seuss Ents., L.P. v. Penguin Books U.S.A., Inc.*, 109 F.3d 1394, 1405 (9th Cir.1997) ("[T]he use of another's trademark in a manner calculated 'to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement' "). Federal courts have recognized that initial-interest confusion is actionable under the Lanham Act, including claims brought under Section 43(a) of that act, 15 U.S.C. 1125(a), and claims alleging initial-interest confusion when a trademark is used as part of a URL. *See Checkpoint Sys., Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 292 (3d Cir.2001) (in a case brought under Section 43(a) of the Lanham Act, the Third Circuit joined the Second, Seventh, and Ninth Circuits in recognizing initial-interest confusion as actionable); *Eli Lilly* at 464; *PACCAR, Inc. v. TeleScan Technologies, L.L.C.*, 319 F.3d 243, 250 (6th Cir.2003), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 125 S.Ct. 542, 160 L.Ed.2d 440 (2004); *Ohio State Univ. v. Thomas*, 738 F.Supp.2d 743, 755 (S.D.Ohio 2010) (in a case alleging trademark infringement and unfair competition under the Lanham Act, the court recognized that the defendant's use of a domain name containing the plaintiff's trademark had the potential to misdirect consumers as they search for websites associated with the plaintiff). Thus, although the majority notes that the Fourth Circuit does not appear to recognize initial-interest confusion, it can hardly be said that federal circuits have "largely" found the theory inapplicable, majority opinion at ¶ 28. The theory is

neither novel nor controversial, and we should not be so quick to dismiss its applicability.

{¶ 45} In rejecting the idea of initial-interest confusion, the majority fails to appreciate that a domain name contains source-identifying information. *See PACCAR, Inc.* at 250 (a significant purpose of a domain name is to identify the entity that owns the website); *Grubbs*, 807 F.3d at 794 (domain names communicate information about the source or sponsor of the website). "When a firm uses a competitor's trademark in the domain name of its website, users are likely to be confused as to its source or sponsorship." *Brookfield Communications, Inc.* at 1066. Even if there is ultimately no source confusion, the initial-interest confusion diverts anyone looking for one website to the other site. *Id*. at 1062.

{¶ 46} For those reasons, I would allow a DTPA claim to be predicated on the initial-interest confusion that may occur when a defendant uses a competitor's trade name in a URL that directs consumers to the defendant's website. I would apply the eight factors outlined in *Frisch's Restaurants, Inc.*, 670 F.2d at 648, to those claims to determine whether the domain name itself, not just the website to which consumers are ultimately directed, causes a likelihood of confusion with respect to the source of the defendant's goods or services. In the context before us, the three most important factors are the similarity of the marks, the relatedness of the goods or services, and the use of the Internet as a marketing channel by both entities. *See id*.; *PACCAR, Inc.* at 254-255.

{¶ 47} To support its contrary conclusion, the majority claims that the Sixth Circuit has found it unnecessary to apply this multifactor test in cases involving domain names. But the cases the majority cites to support that conclusion are unavailing. In *Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir.2003), the Sixth Circuit concluded that the parties' dispute did not implicate the Lanham Act because the defendant was not using a website that shared a name with the plaintiff's shopping mall and therefore did not constitute commercial speech. *Id.* at

775-776. Nonetheless, the court said in dicta that there was also no likelihood of confusion in the case because the defendant had a conspicuous disclaimer on its noncommercial website indicating that the website was not the mall's official website and included a hyperlink that redirected users to the plaintiff's website. *Id.* at 777. That can hardly be classified as a rejection of a multifactored-analysis approach to domain-name cases.

{¶ 48} The majority then cites *Dassault Systèmes, SA v. Childress*, 828 Fed.Appx. 229, 250 (6th Cir.2020), and represents that the Sixth Circuit did not apply the *Frisch's Restaurants, Inc.* factors there either. But the majority completely ignores that the district court in that matter *did* apply the *Frisch's Restaurants, Inc.* factors when it instructed the jury on how to analyze whether the defendant's use of the plaintiff's trademark caused a likelihood of confusion. *See Dassault Systèmes, SA v. Childress*, E.D.Mich. No.2:09-cv-10534-MOB-MJH, 2017 WL 6804231, *4 (July 14, 2017). The jury subsequently returned a verdict in favor of the defendant on the plaintiff's trademark-infringement claim. The plaintiff then filed a motion for judgment as a matter of law, arguing that the jury's decision was against the manifest weight of the evidence, and the district court denied that motion. On appeal, the Sixth Circuit needed to decide only whether the record supported the jury's finding that the defendant's website was unlikely to cause confusion in order to affirm the district court's decision on that motion. The Sixth Circuit's determination that the record supported the jury's verdict—which the jury based on an application of the *Frisch's Restaurants, Inc.* factors—does not support the conclusion that the Sixth Circuit does not follow the eight-factor analysis in domain-name cases.

{¶ 49} The majority's reliance on these cases also displays a misunderstanding about the deceptive use Wooster Floral alleges here. The majority quotes *Childress* for the proposition that a consumer's initial-interest confusion will dissipate as soon as she goes to Green Thumb's website, which does

22

not incorporate Wooster Floral's trade name. But *Childress* focused on the potential for a defendant's website to show up following a consumer's Internet search for a particular trade name using a search engine. The defendant in *Childress* used the plaintiff's trade name only as *part* of its domain name. . Initial-interest confusion is "not as great" when it is predicated on results that are returned through an Internet search engine, as opposed to when the trade name itself is the domain name that can be typed in as a URL. *See Brookfield Communications, Inc.*, 174 F.3d at 1062; *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 945 (9th Cir.2002), fn. 10 (discussing the role of search engines in the initial-interest confusion context and finding it "largely irrelevant what results when a given term is input into a search engine").

{¶ 50} Similarly, the majority's reliance on language in *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930 (9th Cir.2015), stating that the eight-factor test was developed for a " 'different problem—i.e., for analyzing whether two competing brands' marks are sufficiently similar to cause customer confusion' " is misplaced. (Emphasis in *Multi Time Machine, Inc.*) Majority opinion at ¶ 33, quoting *Multi Time Machine, Inc.* at 936. The Ninth Circuit in *Multi Time Machine, Inc.* reaffirmed that the eight-factor test applies to analyzing the likelihood of customer confusion. *Id.* at 936. When the court stated that those factors were developed to analyze whether competitor's *marks* caused customer confusion, it was talking about trademarks, which are treated as functionally equivalent to trade names. *Younker v. Nationwide Mut. Ins. Co.*, 175 Ohio St. 1, 6, 191 N.E.2d 145 (1963) (recognizing that the basic principles governing trade names and trademarks are the same). The issue in *Multi Time Machine, Inc.* was whether the eight-factor test applied to a dispute involving competing *brands*. The plaintiff alleged that the defendant was infringing upon its trademark because when customers typed the plaintiff's trademark into the defendant's search bar, the results would include products made by competing brands. But the defendant was not

using the plaintiff's trademark at all. In rejecting the application of the eight-factor test in that context, the Ninth Circuit explained that "the confusion [was] not caused by the design of the competitor's mark, but by the design of the web page that [was] displaying the competing mark and offering the competing products for sale." *Id.* at 937. In the " 'keyword advertising context,' " the likelihood-of-confusion analysis turns on what the consumer saw on the screen and what she reasonably believed, given the context of the search. *Id.*, quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153 (9th Cir.2011).

{¶ 51} The case before us is not a keyword-advertising case—it's a trade-name case. Green Thumb is using Wooster Floral's trade name as a domain name to redirect potential customers to Green Thumb's website. This case falls squarely within the type of dispute that the court in *Multi Time Machine, Inc.* recognized is subject to the *Frisch's Restaurants, Inc.*, 670 F.2d at 648, eight-factor test to assess whether there is a likelihood of confusion about the source of the goods or services. *See also Interstellar Starship Servs., Ltd.*, 304 F.3d at 945; *Ohio State Univ.*, 738 F.Supp.2d at 745; *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 507-509 (9th Cir.2011) (applying the eight-factor test to a domain-name dispute); *A.B.C. Carpet Co., Inc. v. Naeini*, E.D.N.Y. No. 00-CV-4884-FB, 2002 WL 100604, *3 (Jan. 22, 2002); *Icon Health & Fitness, Inc. v. Kelley*, W.D.Texas No. 1:17-CV-356-LY, 2017 WL 6610085, *2 (Dec. 27, 2017) (applying the Fifth Circuit's similar eight-factor "digits of confusion" analysis to a domain-name dispute); *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F.Supp.3d 1321, 1327-1328 (S.D.Fla.2015) (applying the Eleventh Circuit's similar likelihood-of-confusion factors to a domain-name dispute). Plainly, the foundation the majority uses to support its rejection of the eight-factor test from *Frisch's Restaurants, Inc.* is nothing more than a house of cards, easily toppled.

{¶ 52} Neither the trial court nor the court of appeals considered whether Green Thumb's use of Wooster Floral's trade name in a URL caused initial-interest

confusion. And neither court analyzed the likelihood of confusion under the factors set out in *Frisch's Restaurant, Inc.* Consequently, I would reverse the judgment of the court of appeals and remand the case to the trial court with an order that the court apply the factors in *Frisch's Restaurant, Inc.* to determine whether Green Thumb violated Ohio's DTPA when it used Wooster Floral's protected trade name in a URL to redirect users to Green Thumb's website.

STEWART, J., concurs in the foregoing opinion.

_____

Tucker Ellis, L.L.P., Susan M. Audey, and Melissa Z. Kelly, for appellant.

Reynolds Law Office and Craig R. Reynolds, for appellee.

_____