NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0377n.06

No. 21-2605

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 19, 2022
DEBORAH S. HUNT, Clerk

MAHINDRA & MAHINDRA, LTD.;
MAHINDRA AUTOMOTIVE NORTH
AMERICA, INC.,

    Plaintiffs-Appellees,

v.

FCA US, LLC,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

OPINION

Before: SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellee Mahindra Automotive North America, Inc. (MANA), a subsidiary of Plaintiff-Appellee Mahindra & Mahindra, Ltd. (M&M) (collectively, "Mahindra"), designed an off-road-only vehicle called the 2018–2019 ROXOR. The United States International Trade Commission (ITC) determined that the 2018–2019 ROXOR infringed the trade dress[1] associated with Jeep vehicles manufactured and sold by Defendant-Appellant FCA US, LLC (FCA). Mahindra then designed a new vehicle, the Post-2020 ROXOR, which the ITC determined did not infringe FCA's trade dress. FCA filed a motion in federal district court to permanently enjoin the Post-2020 ROXOR under the "safe-distance rule," an

---

[1] "Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sale." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 536 (6th Cir. 2014) (quoting *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 503 (6th Cir. 2013)).

equitable rule applied by courts in crafting injunctions for known infringers of intellectual property. The district court declined to apply the safe-distance rule and denied FCA's motion based on the procedural posture of the case and the ITC's analysis regarding the Post-2020 ROXOR's non-infringement of FCA's trade dress. Because the district court provided insufficient reasons for declining to apply the safe-distance rule, we VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.

## I.

### A. 2018–2019 ROXOR

In 2018, MANA manufactured an off-road-only vehicle called the 2018–2019 ROXOR. FCA filed a complaint with the ITC on August 1, 2018, claiming that the 2018–2019 ROXOR infringed FCA's unregistered trade dress (the "Jeep Trade Dress"), in violation of the Lanham Act, 15 U.S.C. § 1125(a). The Jeep Trade Dress comprises six elements: (1) "a boxy body shape with flat[-] appearing vertical side and rear body panels ending at about the same height as the hood"; (2) a "substantially flat hood with curved side edges that tapers to be narrower at the front"; (3) "trapezoidal front wheels with front fenders or fender flares that extend beyond the front of the grille"; (4) "a flat[-]appearing grille with vertical elongated grille slots and a trapezoidal outline that curves around round headlamps positioned on the upper part of the grille"; (5) "exterior hood latches"; and (6) "door cutouts above a bottom portion of the side body panels." R. 1-3, PID 40. FCA also alleged that Mahindra infringed and diluted five federally registered trademarks.

On August 23, 2018, Mahindra brought this action in federal district court, seeking, among other things, a declaratory judgment that the 2018–2019 ROXOR did not infringe the Jeep Trade Dress and FCA's trademarks. Mahindra also filed a motion for a preliminary injunction seeking to require FCA to withdraw its ITC complaint. FCA brought counterclaims alleging, among other

things, trademark and trade-dress infringement and dilution. The district court denied Mahindra's request to enjoin FCA's ITC complaint and adjourned the trial date pending the ITC proceedings.

In the ITC proceedings, an administrative law judge (ALJ) held an evidentiary hearing in August 2019. The ALJ determined that the 2018–2019 ROXOR infringed the Jeep Trade Dress. The ITC affirmed issuing a "limited exclusion order" (LEO) barring importation of the 2018–2019 ROXOR, and cease-and-desist orders (CDOs) barring, among other things, importation, sale, and marketing of vehicles or vehicle components "that infringe the Jeep Trade Dress or any trade dress confusingly similar thereto or that are otherwise misleading as to source, origin, or sponsorship." R. 424-7, PID 43163.

The parties filed cross-motions for summary judgment in district court. FCA moved for summary judgment on Mahindra's claim of non-infringement of the Jeep Trade Dress and on FCA's trade-dress-infringement counterclaim; Mahindra moved for summary judgment on its claim of non-infringement of FCA's trademarks, FCA's counterclaims of trademark infringement, and FCA's counterclaims of trademark and trade-dress dilution. The district court granted the parties' cross-motions for summary judgment. As relevant here, the district court concluded that issue preclusion barred relitigation of the ITC's determination that the 2018–2019 ROXOR infringed the Jeep Trade Dress. The district court expressly limited its rulings to the 2018–2019 ROXOR, the only design that the ITC had reviewed at that point.

On October 16, 2020, FCA filed a motion in district court to permanently enjoin the 2018–2019 ROXOR vehicle and vehicle designs "confusingly similar" to the Jeep Trade Dress. The district court did not rule on that motion until it resolved the issues presented in this appeal.

**B. Post-2020 ROXOR**

Before the ITC determined that the 2018–2019 ROXOR infringed the Jeep Trade Dress, Mahindra designed two new vehicles: the 2020 ROXOR and the Post-2020 ROXOR. After the ITC's determination regarding the 2018–2019 ROXOR, Mahindra petitioned the ITC for an expedited determination that its new vehicle designs did not infringe the Jeep Trade Dress. Mahindra requested, in the alternative, that the ITC initiate a modification proceeding regarding only the Post-2020 ROXOR. On July 20, 2020, the ITC initiated a modification proceeding to determine whether the Post-2020 ROXOR infringed the Jeep Trade Dress. At that point, Mahindra had finalized the Post-2020 ROXOR's design, but had not yet manufactured the vehicle. The ITC did not consider whether the 2020 ROXOR infringed the Jeep Trade Dress.

The ALJ initially scheduled a one-day evidentiary hearing in the modification proceeding, but the parties requested to forgo the hearing and submit the matter for resolution on the briefs and evidence in the record. FCA argued that the ALJ should apply the "safe-distance rule" to require Mahindra's redesigned vehicle to maintain a "safe distance" from the Jeep Trade Dress, but the ALJ determined that the safe-distance rule was inapplicable. The ALJ reasoned in part that "the idea of safe distance is not a rule so much as a policy consideration, because neither the two cited ITC cases, nor any other authority cited by FCA, establish a clear standard for what constitutes a safe distance." R. 437-3, PID 44173. Applying the multi-factor standard in *In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973) [hereinafter *DuPont*], the ALJ concluded that there was no "likelihood of confusion," and thus that the Post-2020 ROXOR did not infringe the Jeep Trade Dress. The ALJ recommended that the ITC modify its LEO and CDOs so as not to apply to the Post-2020 ROXOR.

The ITC adopted with modification the ALJ's recommendation. The ITC first concluded that the ALJ reasonably declined to apply the safe-distance rule, which the ITC described as "a principle recited in federal court cases related to crafting injunctive relief." R. 446-5, PID 44484–85. The ITC reasoned in part that the safe-distance rule "is an equitable principle that allows courts 'to craft permanent injunctions tailored to the needs of each case.'" *Id.* at PID 44486 (quoting *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 544–45 (6th Cir. 2014)). The ITC then analyzed the similarities and differences between the Post-2020 ROXOR and the Jeep Trade Dress and, applying the *DuPont* factors, concluded that the Post-2020 ROXOR did not infringe the Jeep Trade Dress.

### C. Federal Circuit Appeals

On August 20, 2020, Mahindra appealed the ITC's ruling that the 2018–2019 ROXOR infringed the Jeep Trade Dress to the United States Court of Appeals for the Federal Circuit. On February 23, 2021, FCA appealed the ITC's ruling that the Post-2020 ROXOR did not infringe the Jeep Trade Dress to the Federal Circuit. The appeals were consolidated, and the Federal Circuit affirmed both rulings in an order issued on March 9, 2022.

### D. Present Motion

Before the Federal Circuit affirmed the ITC's rulings, FCA filed a motion in district court to permanently enjoin the Post-2020 ROXOR design "in accordance with the Safe Distance Rule." R. 446, PID 44430. As the title of FCA's motion suggests, the motion sought to enjoin the Post-2020 ROXOR under the safe-distance rule only; it did not request that the court apply any other standard. And FCA briefed and argued only that the Post-2020 ROXOR violated the safe-distance rule. Mahindra argued that FCA's motion was barred by claim preclusion and issue preclusion, and that the safe-distance rule was inapplicable.

The district court consolidated its hearings on FCA's motion for a permanent injunction of the 2018–2019 ROXOR and FCA's motion to permanently enjoin the Post-2020 ROXOR in accordance with the safe-distance rule. After the consolidated hearing, the parties stipulated to a permanent injunction barring the 2018–2019 ROXOR.

The district court granted FCA's motion for a permanent injunction barring the 2018–2019 ROXOR based on the parties' stipulation and an analysis of the permanent-injunction factors, but denied FCA's motion for a permanent injunction barring the Post-2020 ROXOR. The district court first explained that claim preclusion did not bar FCA's argument that the court should enjoin the Post-2020 ROXOR under the safe-distance rule because the ITC had not reached a "final decision on the merits concerning whether the Post-2020 Roxor stays a safe distance from the Jeep Trade Dress." R. 459, PID 45218.

The district court then discussed the safe-distance rule and "decline[d] to apply [it] . . . to enjoin [the] Post-2020 Roxor." *Id.* at PID 45226; *see also id.* at PID 45224 ("Upon considering the appropriate remedial action, the Court declines to apply the Safe Distance Rule to the present matter.").

The district court reasoned:

> [T]he parallel proceedings before the ALJ and the full [ITC] reveal that there are "so many differences" between the Post-2020 Roxor and the Jeep Trade Dress such that "[t]he average purchaser certainly will know immediately that [the Post-2020 Roxor] is not a Jeep by merely looking at it straight on." Indeed, after months of discovery, the ALJ determined that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress, that the degree of similarity is otherwise very low, that Mahindra's intent in designing the modified vehicle [weighs] against a finding of likelihood of confusion, and that the [consumer] survey evidence [weighs slightly] against such a finding. The [ITC] agreed and concluded that the redesigned Post-2020 Roxor does not infringe the Jeep Trade Dress.

The Court declines to depart from the parallel proceedings before the ITC at this juncture, including those related to the Poret [consumer] survey,[2] after recently adopting the parties' arguments from prior briefs that the ITC's findings related to the 2018–2019 Roxor have preclusive effect in these proceedings. Even if the Court chose to make a finding opposite to the ITC's conclusion that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress, which it does not, the Court would still find that the procedural posture of the instant matter cautions against applying the Safe Distance Rule. Indeed, other district courts within this Circuit have hesitated to apply the Safe Distance Rule when outside of the post-injunction context.

*Id.* at PID 45224–25 (citations omitted). The district court then noted that because it declined to apply the safe-distance rule, it did not need to address "whether issue preclusion applie[d] to . . . the ITC's discussion of the [rule]." *Id.* at PID 45226 n.10. FCA appealed.

## II.

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "An abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. We will find an abuse of discretion only when the Court has a definite and firm conviction that the trial court committed a clear error of judgment." *Innovation Ventures*, 763 F.3d at 533.

---

[2] FCA's expert, Hal Poret, designed a consumer survey that included a "test image" of the Post-2020 ROXOR and "control images." The control images maintained as much of the Post-2020 ROXOR as possible and removed the parts incorporating elements of the Jeep Trade Dress. (R. 437-3, PID 44185.) In Poret's survey, respondents were asked to identify which company produced the test and control vehicles. 27% of the test group and 8% of the control group identified Jeep, resulting in a 19% "confusion rate." Mahindra submitted results from two surveys conducted by its expert, Dr. Keith Van Liere. In both surveys, 20% of the respondents were confused about the source of the test vehicle and 20% were confused about the source of the control vehicle, resulting in a 0% "confusion rate."

The ITC determined that the control vehicles used by Mahindra's expert were "flawed because they include[d] substantial portions of the Jeep Trade Dress elements and ha[d] 'only very minimal changes' compared to the test vehicles." R. 446-5, PID 44494 (citing *Spangler Candy Co. v. Tootsie Roll Indus.,* LLC, 372 F. Supp. 3d 588, 598 (N.D. Ohio 2019)). The ITC then concluded that the Poret survey's 19% confusion rate was "not significant enough to support likelihood of confusion, particularly in light of the [ITC's] findings . . . that the Post-2020 ROXOR is not substantially similar to the Jeep Trade Dress." *Id.* at PID 44495. The ITC cited a treatise stating that "[s]urvey confusion numbers that go below 20% need to be carefully viewed against the background of other evidence weighing for and against a conclusion of likely confusion." *Id.* (quoting 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:188 (5th ed. 2020)).

### A. Safe-Distance Rule

The safe-distance rule is an equitable rule applied by courts to craft permanent injunctions for known infringers of intellectual property. *See id.* at 544. "Once a party infringes on another's trademark or trade dress, the confusion sowed 'is not magically remedied' by *de minimis* fixes." *Id.* (quoting *Taubman Co. v. Webfeats*, 319 F.3d 770, 779 (6th Cir. 2003)). Rather, because "confusion lingers," the safe-distance rule requires the infringer "not only to secure a new non-infringing name (or other infringing characteristic) for his product, but one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *Id.* (quoting *Taubman*, 319 F.3d at 779). Accordingly, the safe-distance rule "prevent[s] known infringers from using trademarks whose use by non-infringers would not necessarily be actionable." *Id.* (quoting *Taubman*, 319 F.3d at 778–79); *see also ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 644 (6th Cir. 2020).

The safe-distance rule serves several useful purposes. It seeks to avoid "preserv[ing] for [infringers] a good will acquired through fraud." *Broderick v. Bascom Rope Co. v. Manoff*, 41 F.2d 353, 354 (6th Cir. 1930). It also "reliev[es] the reviewing court of the need to retry the entire range of issues that may be relevant in an infringement action for each small variation the defendant makes to the enjoined mark." *Innovation Ventures*, 763 F.3d at 544 (quoting *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 118 (2d Cir. 2008)). "If the law were otherwise, an enjoined party 'could simply make a tiny change and start a new trademark contest all over again in the context of the contempt hearing as to use of the "new" format.'" *Id.* (quoting 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:21 (4th ed. 2013)). Courts have found that the safe-distance rule is "especially" useful "where the infringement was abusive or in bad faith." *PRL USA Holdings*, 520 F.3d at 117 (citing *Tamko Roofing Prods., Inc.*

*v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 40 (1st Cir. 2002); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:4 (4th ed. 2008)); *cf. Broderick*, 41 F.2d at 354.

The safe-distance rule "has its roots" in a 1912 unfair-competition case that did not refer to the rule by name. *Taubman*, 319 F.3d at 779 n.5. In *Coca Cola Co. v. Gay Ola Co.*, 200 F. 720 (6th Cir. 1912), a beverage manufacturer, Gay-Ola, created a beverage identical in appearance and taste to Coca-Cola, printed the beverage's name in the same script as Coca-Cola's name, used red barrels as did Coca-Cola, and did not indicate on its packages which company manufactured the beverage. *Id.* at 723. We enjoined Gay-Ola from using red barrels, unmarked packages, and coloring like Coca-Coca's, although at least some of those features would not necessarily have been unlawful in and of themselves, *id.* at 723–725, reasoning:

> It is first to be observed that [Gay-Ola] is at the best on a narrow ground of legality. The name which it has adopted does not negative an intent to confuse. The product is identical, both in appearance and taste; and the form of script used in printing the 'trade-mark['] names is the same. Even if the use of each of these items of similarity was lawful, when accompanied by good faith and no intent to deceive, they put the product near that dividing line where good or bad faith is the criterion, and their presence puts upon the user a burden of care to see that deception does not naturally result. Conversely, when we find, as a fact, from the other conduct of the defendant, that the underlying intent is to perpetrate a fraud upon the consumer, this intent must color the accompanying acts, and some which otherwise might be innocent become guilty.

*Id.* at 723. We concluded that red barrels "ha[d] long been used by [Coca-Cola] in a way that was exclusive in [its] trade," such that their "adoption by [Gay-Ola] [was] one of the constituent parts of [its] scheme of fraud"; Gay-Ola had "no motive for sending out unmarked packages except to aid in a fraudulent substitution"; and Gay-Ola's "adoption, not only of caramel, but of the selected amount of caramel, was for the main and primary purpose of making the two articles look just alike." *Id.* at 723–24.

In *Broderick*, a 1930 case, a manufacturer of tow ropes infringed on another company's trademarked name, "Autowline," by selling a product called "Au-tow-line." 41 F.2d at 353. The district court enjoined the defendant from marketing its products as either "Autowline" or "Au-tow-line." *Id.* Immediately afterward, the defendant began selling a product called "Auto-tow-line," and the plaintiff initiated a contempt proceeding against the defendant. *Id.* We concluded that use of the word "Auto-tow-line" constituted contempt of the injunction, reasoning:

> [The defendant] was disqualified to claim the full competitive rights which might be open to a stranger. He was clearly privy to the former decree and bound by it as if he had been named as a party; the name Au-tow-line was adjudged to be plaintiff's valid trade-mark; he was enjoined from using it, and the effect of the injunction, of course, was to enjoin also the use of any word in such close imitation or resemblance as to mislead the public; it is obvious that the ordinary purchaser would be confused or misled by the similarity between Au-tow-line and Auto-tow-line, when prominently displayed as if the proprietary name of two substantially similar articles. To permit [the defendant] to continue his infringing business with merely this change in the characterizing name is to make the decree futile and to disparage the power of the court to give relief against trade larceny. . . . [The defendant] had organized and built up a business based upon a fraudulent appropriation of what belonged to the plaintiff. To permit [the defendant] to continue without interruption, and to the full scope of identity permitted to an honest competitor, would be to preserve for them a good will acquired through fraud. The due protection of trade-mark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line— even if that requirement involves a handicap as compared with those who have not disqualified themselves.

*Id.* at 354.

In *Taubman*, the defendant created a website with the domain name shopsatwillowbend.com, which the plaintiff claimed infringed on the trademarked name of its shopping mall, "The Shops at Willow Bend." 319 F.3d at 772. The plaintiff brought a trademark-infringement action and filed a motion for a preliminary injunction. *Id.* The defendant responded by registering five more domain names: taubmansucks.com, shopsatwillowbendsucks.com, theshopsatwillowbendsucks.com, willowbendmallsucks.com, and willowbendsucks.com (the

"additional domain names"). *Id.* The district court granted the plaintiff's motion for a preliminary

injunction, enjoining the defendant from using the first domain name. *Id.* at 773. The plaintiff

then filed a motion to amend the preliminary injunction to enjoin the additional domain names,

which the district court granted. *Id.* We reversed the district court's preliminary-injunction orders

because the plaintiff had not demonstrated a likelihood of success on the merits or shown that the

other preliminary-injunction factors supported its request for relief. *Id.* at 774–78. We also

rejected the plaintiff's argument that the district court should have applied the safe-distance rule

to the taubmansucks.com website, reasoning:

> [T]he Safe Distance Rule is . . . founded on a likelihood of confusion standard. The rule simply notes that once an infringer has confused the public, that confusion is not magically remedied by a name change. Instead, the confusion lingers, creating the need for the infringer not only to secure a new non-infringing name (or other infringing characteristic) for his product, but one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related.

> We need not find whether the Safe Distance Rule has survived the enactment of the Lanham Act, because even if it is still good law, it does not apply here. First, the Safe Distance Rule has only been applied in settings where the second use was merely a slight deviation of the first use and was also commercial. *See Broderick*, 41 F.2d at 353–54 (developing Safe Distance Rule in instance when infringer attempted to change offending use from "au-tow-line" to "auto-tow-line"); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1156 (7th Cir. 1994) (applying Safe Distance Rule to prevent infringer from changing infringing logo in trivial ways, because such changes would force relitigation of essentially the same issue). The Safe Distance Rule has never been applied when the second use is a non-commercial critical commentary, but only where the second use is a different name for the same product. *See, e.g.*, *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 40 (1st Cir. 2002) (applying Safe Distance Rule where infringer simply tried to escape liability by changing infringing "Heritage Series" to "H-Series"); *Broderick*, 41 F.2d at 353–54. As stated above, the First Amendment protects [the defendant's] commentary and criticism, and negates the Safe Distance Rule to any extent it might otherwise have applied.

> Second, the Safe Distance Rule was meant to be applied only against proven infringers. [The defendant] has not previously been found liable of infringement, nor in contempt of either injunction. Accordingly, our finding above that [the

plaintiff] is not likely to succeed on the merits of [his infringement claim regarding another site] precludes any further discussion of the Safe Distance Rule.

*Id.* at 778–80 (some citations omitted).

In *Innovation Ventures*, the plaintiff, an energy-drink manufacturer, obtained a jury verdict in its trademark and trade-dress infringement action against the defendants. 763 F.3d at 531. The district court issued a permanent injunction, prohibiting the defendants from selling six products found to infringe the plaintiff's trademark and trade dress, and barring defendants from selling products with "marks that are confusingly similar to" the trademark and trade dress. *Id.* at 531–32. The defendants continued to sell the specifically enjoined products and modified versions of those products, and the plaintiff petitioned the district court to hold the defendants in contempt of the injunction. *Id.* at 533. The district court held the defendants in contempt for selling the specifically enjoined products and the modified products. *Id.* at 543. "The district court did not hold that the modified products violated the Lanham Act"; "[r]ather, the court 'used the [safe-distance rule] to find that the modified products were confusingly similar to FHE's trademark and trade dress.'" *Id.* at 544. The defendants appealed the contempt ruling with respect to the modified products. *Id.* at 543–44.

We affirmed, reasoning that the safe-distance rule was "particularly apt" because "a serial infringer ha[d] tinkered with products to skirt a permanent injunction for commercial gain." *Id.* at 545. "Once [the plaintiff] moved for contempt," we concluded, "the district court did not err by refusing to go through a full likelihood-of-confusion analysis with Defendants' modified products"; rather, "[t]he district court was within its rights to simply determine whether the

modified products were confusingly similar to [the plaintiff's trademark and trade dress]."[3]  *Id.*  In addition to citing *Taubman*'s rationale for the rule based on "linger[ing]" confusion, we noted that "[i]n contempt proceedings, the Safe Distance Rule 'reliev[es] the reviewing court of the need to retry the entire range of issues that may be relevant in an infringement action for each small variation the defendant makes to the enjoined mark.'"  *Id.* at 544 (quoting *PRL USA Holdings*, 520 F.3d at 118).

### B. Applicability of the Safe-Distance Rule[4]

#### 1.

As an initial matter, the parties disagree regarding what the district court meant when it declined to "apply" the safe-distance rule.  FCA argues that the district court declined to "apply" the rule by not assessing whether the Post-2020 ROXOR stays a "safe distance" from the Jeep Trade Dress.  (*See* Appellant's Br. at 26–27 ("Despite Mahindra's prior infringement, the District Court erred in declining to analyze the redesign under the Safe Distance Rule, which under this

---

[3] When discussing the safe-distance rule, the court cited the rule's requirement, articulated in *Taubman*, that a new name or product be "so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related."  *Innovation Ventures*, 763 F.3d at 544 (quoting *Taubman*, 319 F.3d at 779).

[4] Mahindra argues in passing, without analysis of the elements of issue preclusion, that the district court "would have been fully justified in simply applying issue preclusion to the ITC's factual findings in the Modification Proceeding in view of the full evidentiary proceedings held by the ALJ and reviewed by the ITC," Appellee's Br. at 32, and adds that the district court's "reliance on the ITC's factual findings to decide whether the Post-2020 ROXOR design should be enjoined is entirely correct because it is consistent with principles of issue preclusion and its earlier rulings in the proceedings below."  *Id.* at 31.  This is the extent of Mahindra's argument regarding issue preclusion, and Mahindra made no argument that claim preclusion bars FCA's motion.  FCA does not discuss issue preclusion; nor does it discuss claim preclusion except to say that it "does not apply."  Appellant's Br. at 2.  Accordingly, the parties forfeited any arguments regarding issue preclusion or claim preclusion.  *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) (explaining that arguments "adverted to in only a perfunctory manner[] are waived").

Issue preclusion and claim preclusion are affirmative defenses.  *McCormick v. Braverman*, 451 F.3d 382, 396 (6th Cir. 2006); *Hutcherson v. Lauderdale Cnty.*, 326 F.3d 747, 757 (6th Cir. 2003).  "Courts generally lack the ability to raise an affirmative defense sua sponte."  *Hutcherson*, 326 F.3d at 757.  Although "the Supreme Court has indicated that a court may take the initiative to assert the res judicata defense sua sponte in 'special circumstances,'" *id.* (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)), we decline to address issue preclusion and claim preclusion sua sponte without the benefit of adequate briefing on those issues.  Consequently, we proceed to address the applicability of the safe-distance rule.

Court's precedent, governs the analysis here. By instead deferring to the ITC's non-infringement conclusion, the District Court applied the wrong standard in determining whether to enjoin the Post-2020 Roxor. Although it properly determined that preclusion did not attach, the District Court 'declin[ed] to depart' from the ITC's likelihood of confusion determination, which had been made under a different legal standard than the Safe Distance Rule."); Reply Br. at 4–5 ("Rather than viewing the Post-2020 Roxor design through the lens of the Safe Distance Rule— the different and more protective standard that this Circuit applies to adjudicated infringers—the district court applied the more lenient, first-look likelihood of confusion standard that the Federal Circuit applies."); Oral Arg. at 26:57–27:37.) In Mahindra's view, by contrast, the district court "analyzed the relevant facts, performed a Safe Distance Rule analysis, and declined to 'apply' the Rule *to enjoin* the Post-2020 ROXOR design." Appellees' Br. at 26; *see also* Oral Arg. at 16:36– 18:07. In its statement of the issue on appeal, Mahindra asserts that the district court "conducted an appropriate substantive analysis of the design considering the Safe Distance Rule and found that the design was a safe distance from [the Jeep Trade Dress]." Appellees' Br. at 1.

We agree with FCA's interpretation of the word "apply" in the district court's opinion. The district court did not state that it was requiring the Post-2020 ROXOR to remain a safe distance from the Jeep Trade Dress. Nor did the district court conclude that the Post-2020 ROXOR satisfied, or did not satisfy, the safe-distance rule's requirement that a known infringer's product be so far removed from "any characteristic" of the initially infringed intellectually property "so as to put the public on notice that the two are not related." *Innovation Ventures*, 763 F.3d at 544 (quoting *Taubman*, 319 F.3d at 779). Thus, we read the district court's opinion as declining to require that the Post-2020 ROXOR stay a "safe distance" away from the Jeep Trade Dress. Whether the Post-2020 ROXOR in fact stays a "safe distance" away is a separate question that

only arises upon application of the safe-distance rule. We do not read the district court's opinion as applying the test.

**2.**

The parties further disagree regarding whether the district court should have applied the safe-distance rule. *Compare* Appellant's Br. at 23–38, *with* Appellee's Br. at 28–42. FCA argues that the district court improperly relied on the ITC's likelihood-of-confusion analysis, Appellant's Br. at 23–30; the safe-distance rule applies because "Mahindra is an adjudicated infringer that intentionally sought to trade on FCA's goodwill" with the 2018–2019 Roxor, "causing widespread confusion that Mahindra conceded warranted injunctive relief," *id.* at 25–26; and the procedural posture of the case does not "caution[] against" application of the safe-distance rule, *id.* at 39–41. Mahindra argues that the district court did not rely on the ITC's "likelihood-of-confusion" analysis, but rather properly relied on the ITC's factual findings, Appellee's Br. at 21, 24–25, 27–28, 31–37; application of the safe-distance rule is discretionary, *id.* at 28, 38–42; the facts of this case do not "mandate use of the [rule] to enjoin the Post-2020 ROXOR," *id.* at 42, 49; and the district court properly considered the procedural posture of the case, *id.* at 49–51.

Mahindra correctly asserts that the safe-distance rule is discretionary. *Innovation Ventures* described the safe-distance rule as an equitable tool that courts can use to craft injunctions. *See* 763 F.3d at 544 ("Equity allows courts, faced with recalcitrant parties who repeatedly violate the law, to craft permanent injunctions which proscribe activities that, standing alone, would have been unassailable. This equitable principle goes by a specialized name in the context of permanent injunctions to protect intellectual property—the Safe Distance Rule." (citation omitted)(quoting *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994))); *id.* ("The Safe Distance Rule gives courts a particularly useful tool in crafting and enforcing permanent injunctions."); *id.*

("The Safe Distance Rule is . . . a well accepted part of the court's remedial toolkit."); *id.* at 545 ("The Safe Distance Rule is nothing more than a specialized application of the courts' traditional equitable power to craft permanent injunctions tailored to the needs of each case . . . .").

Other courts of appeals view the safe-distance rule as discretionary. In *Badger*, a jury found that the defendant-manufacturer's water meter infringed the plaintiff-manufacturer's trade dress. 13 F.3d at 1150. The district court enjoined the defendant from adopting some elements of the infringed trade dress. *Id.* at 1153. The defendant subsequently modified its water meter, and the plaintiff moved to enjoin the modified water meter because it did not avoid "all possibility of confusion" with the plaintiff's water meter. *Id.* The district court denied the plaintiff's motion and the Seventh Circuit affirmed, holding that,

> while the district court would have been within its discretion to require [the defendant] to choose a trade dress that avoided all possibility of confusion, it was not required as a matter of law to do so. Thus the district court did not err by refusing to apply the "possibility of confusion" standard to the [defendant's modified water meter] . . . .

*Id.* at 1156; *see also John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1142 (10th Cir. 2008) ("Although a district court may require a prior infringer to choose a mark that avoids all possibilities of confusion, 'it is not required as a matter of law to do so.'" (quoting *Badger Meter*, 13 F.3d at 1156)).[5]

---

[5] Mahindra also relies on the Second Circuit's decision in *PRL USA Holdings*. (*See* Appellant's Br. at 40.) There, a jury found that the United States Polo Association (USPA) and its licensee did not infringe three Ralph Lauren trademarks held by the plaintiff. 520 F.3d at 111. On appeal, the plaintiff argued that the jury should have been instructed that the defendants, as previous infringers, were required to maintain a "safe distance" from the plaintiff's trademarks. *Id.* at 117. The Second Circuit concluded that the district court did not err in refusing to give a safe-distance-rule instruction because the plaintiff "cite[d] no authority establishing that such an instruction must be given in a civil infringement action alleging a new infringement by one previously adjudicated to have infringed the plaintiff's mark." *Id.* at 118. The court also concluded that the requested instruction was "particularly inappropriate" because of the scope of the previous injunction, which allowed USPA to use "a mounted polo player or equestrian or equine symbol which is distinctive from the [Ralph Lauren] polo player symbol . . . ." *Id.* The court explained that, "[t]o instruct the jury that USPA was required to keep a 'safe distance' without further explanation of how this related to USPA's right, under the injunction, to use a mounted polo player, could have led the jury to find liability based on conduct which the earlier injunction had expressly permitted." *Id.*

Nevertheless, our precedents do not establish that a court's discretion regarding the safe-distance rule is limitless. In *Innovation Ventures*, we described the safe-distance rule as a "specialized application of the courts' traditional equitable power to craft permanent injunctions *tailored to the needs of each case*." 763 F.3d at 545 (emphasis added). We do not read that language as suggesting that a trial court can apply the safe-distance rule, or decline to apply the rule, for any reason or no reason at all. Just as a court must justify entering a permanent injunction based on fact-dependent, equitable considerations, *see eBay*, 547 U.S. at 391, a court must justify its decision to apply or not apply the safe-distance rule based on the factual circumstances of each case.

**3.**

The district court provided two reasons for declining to apply the safe-distance rule.

**a.**

The district court first relied on the ITC's analysis supporting its conclusion that the Post-2020 ROXOR did not infringe the Jeep Trade Dress, stating:

> [T]he parallel proceedings before the ALJ and the full [ITC] reveal that there are "so many differences" between the Post-2020 Roxor and the Jeep Trade Dress such that "[t]he average purchaser certainly will know immediately that [the Post-2020 Roxor] is not a Jeep by merely looking at it straight on." Indeed, after months of discovery, the ALJ determined that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress, that the degree of similarity is otherwise very low, that Mahindra's intent in designing the modified vehicle [weighs] against a finding of likelihood of confusion, and that the [consumer] survey evidence [weighs slightly] against such a finding. The [ITC] agreed and concluded that the redesigned Post-2020 Roxor does not infringe the Jeep Trade Dress.

R. 459, PID 45224 (citations omitted). The district court "decline[d] to depart from the parallel proceedings before the ITC at this juncture, including those related to the Poret survey, after recently adopting the parties' arguments from prior briefs that the ITC's findings related to the 2018–2019 Roxor have preclusive effect in these proceedings." *Id.* at PID 45225.

-17-

Insofar as the district court relied on the ITC's legal determination that the Post-2020 ROXOR did not infringe the Jeep Trade Dress, that was not a valid reason for declining to apply the safe-distance rule. By definition, the safe-distance rule prevents known infringers from engaging in conduct that might be permissible for non-infringers. *See Innovation Ventures*, 763 F.3d at 544 ("the Safe Distance Rule 'prevent[s] known infringers from using trademarks whose use by non-infringers would not necessarily be actionable'" (quoting *Taubman*, 319 F.3d at 778–79)); *see also ECIMOS*, 971 F.3d at 644. Because a court can enjoin even a non-infringing product under the safe-distance rule, the simple fact that a known infringer's redesigned product is non-infringing does not support the conclusion that the safe-distance rule should not apply to the redesigned product.

Mahindra asserts that the district court relied on the ITC's factual findings regarding the differences between the Post-2020 ROXOR and the Jeep Trade Dress, rather than the ITC's legal conclusions. Appellee's Br. at 21, 27–28, 31–37. "Any dispute about the evidence that pertains to the [likelihood-of-confusion] factors presents a factual issue . . . In contrast, 'the further determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion.'" *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 427 (6th Cir. 2017) (quoting *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1106 (6th Cir. 1991)).

The district court seems to have relied on both the ITC's legal conclusions of non-infringement and no likelihood of confusion—*see* R. 459, PID 45224 (restating the ITC's legal conclusion that the Post-2020 ROXOR "does not infringe the Jeep Trade Dress"); *id.* ("[A]fter months of discovery, the ALJ determined . . . that Mahindra's intent in designing the modified vehicle [weighs] against a finding of likelihood of confusion, and that the survey evidence [weighs

slightly] against such a finding." (citations omitted)); *id.* at 45224 n.9 ("Importantly, the Commission determined that the 19 percent net confusion rate from the Poret survey . . . 'is not significant enough to support likelihood of confusion, particular[ly] in view of the [ALJ's determination] and the Commission's findings as to *DuPont* factor 1 that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress.'" (quoting R.446-5, PID 44495))—and the ITC's factual findings regarding the differences between the Post-2020 ROXOR and the Jeep Trade Dress—*see id.* ("[A]fter months of discovery, the ALJ determined that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress, [and] that the degree of similarity is otherwise very low . . . ."); *id.* ("[T]he parallel proceedings before the ALJ and the full [ITC] reveal that there are 'so many differences' between the Post-2020 Roxor and the Jeep Trade Dress such that '[t]he average purchaser certainly will know immediately that [the Post-2020 Roxor] is not a Jeep by merely looking at it straight on.'"(quoting R. 437-3 PID 44182)).

Although the district court relied in part on factual findings, those findings do not themselves support the district court's decision not to apply the safe-distance rule. The fact that two products are not "substantially similar," for example, does not necessarily counsel that the court should decline to inquire whether a known infringer's product is "so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *Innovation Ventures*, 763 F.3d at 544 (quoting *Taubman*, 319 F.3d at 779). Similarly, we do not read the district court's finding about what the average purchaser would know by looking at the Post-2020 ROXOR "straight on"—a finding based on the ITC's finding in the infringement context—as a sufficient reason to decline to apply the safe-distance rule's requirement that a known infringer's product be sufficiently far removed from "any characteristic" of the initially infringed intellectual property. *See id.* Thus, the district court's reliance on the ITC's

likelihood-of-confusion analysis insufficiently justified the district court's decision not to apply the safe-distance rule.

**b.**

The district court's second reason for declining to apply the safe-distance rule was that the procedural posture of this case "cautions against" applying the rule, and "other district courts within this Circuit have hesitated to apply the Safe Distance Rule when outside of the post-injunction context." R. 459, PID 45225 (collecting cases). Mahindra similarly suggests that application of the safe-distance rule is limited to contempt proceedings. *See* Appellee's Br. at 21–22, 30–31, 42. We disagree.

This case's procedural posture does not caution against applying the safe-distance rule. Other courts have applied the safe-distance rule following a finding of infringement to determine the proper scope of an initial injunction regarding redesigns. *See, e.g.*, *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 375–76 (4th Cir. 2021) (approving the scope of a permanent injunction under the safe-distance rule); *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1179 (11th Cir. 2002) (approving the scope of a preliminary injunction under the safe-distance rule); *Tamko*, 282 F.3d at 40-41 (approving the scope of a permanent injunction under the safe-distance rule); *Chevron Chem. Co. v. Voluntary Purchasing Grps.*, 659 F.2d 695, 705 (5th Cir. 1981) (reversing the district court's judgment that one of the defendant's products did not infringe the plaintiff's trade dress, and directing the district court to enjoin the defendant from using the infringed trade dress "or any other trade dress confusingly similar," which the court instructed could include the defendant's non-infringing products under the safe-distance rule).[6]

---

[6] On remand, the district court applied the safe-distance rule and enjoined two of the defendant's three non-infringing products under the rule. *Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, No. 3-76-1374-H, 1982 WL 63787, at *1–2 (N.D. Tex. June 25, 1982).

Additionally, the rationales for the safe-distance rule are applicable beyond the "post-injunction" context. Lingering confusion from a known infringement, for example, may justify application of the safe-distance rule in crafting an initial injunction involving redesigns.

Mahindra's suggestion that the safe-distance rule applies only in contempt proceedings is similarly unpersuasive. To be sure, courts have found the safe-distance rule useful in the contempt context; "[i]n contempt proceedings, the Safe Distance Rule 'reliev[es] the reviewing court of the need to retry the entire range of issues that may be relevant in an infringement action for each small variation the defendant makes to the enjoined mark.'" *Innovation Ventures*, 763 F.3d at 544 (quoting *PRL USA Holdings*, 520 F.3d at 118); *see also Broderick*, 41 F.2d at 354; *Badger Meter*, 13 F.3d at 1156. And, in *Innovation Ventures*, we distinguished *Taubman* in part on the basis that *Taubman* did not involve a contempt proceeding. *See* 763 F.3d at 545. However, we have not expressly limited application of the safe-distance rule to contempt proceedings, and other courts of appeals have affirmed applications of the safe-distance rule outside that context. *See PRL USA Holdings*, 520 F.3d at 117 (citing *Cumulus Media*, 304 F.3d at 1179; *Tamko*, 282 F.3d at 40); *RXD Media*, 986 F.3d at 375–76; *Serv. Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1124–25 (7th Cir. 1988) (affirming denial of a motion to modify an injunction to exclude a proposed redesigned product under the safe-distance rule); *see also* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:4 (5th ed. 2021) (explaining that "a court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement."). Thus, the district court's second proffered reason for declining to apply the safe-distance rule—that the procedural posture of this case "cautions against" applying the rule—does not support the district court's resolution of FCA's motion.

**4.**

In sum, the district court abused its discretion in relying solely on the ITC's likelihood-of-confusion analysis and the procedural posture of this case in declining to apply the safe-distance rule. We therefore vacate the district court's judgment and remand for the district court to reconsider whether it should apply the safe-distance rule. On remand, the district court may take into account the factual findings of the ITC, but must also consider other factors relevant to applying the safe-distance rule, including potential "linger[ing]" consumer confusion from the 2018–2019 ROXOR, *see Innovation Ventures*, 763 F.3d at 544 (quoting *Taubman*, 319 F.3d at 779), and whether Mahindra's "infringement was abusive or in bad faith," *PRL USA Holdings*, 520 F.3d at 117 (citing *Tamko*, 282 F.3d at 40; 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:4 (4th ed. 2008)); *cf. Broderick*, 41 F.2d at 354; *Coca Cola*, 200 F. at 723. Those factors are relevant considerations based on precedent; they are not necessarily exhaustive. We note that, should the district court decide to apply the safe-distance rule, it must then consider the separate question whether the Post-2020 ROXOR stays a "safe distance" from the Jeep Trade Dress.

**III.**

For the foregoing reasons, we VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.